William SIMPSON

v.

DYTEX CHEMICAL COMPANY.

No. 93–569–M.P.

Supreme Court of Rhode Island.

Nov. 16, 1995.

John Harnett, John A. Toro, Providence, for Plaintiff.

Kevin B. Reall, Jeffrey Liptrot, Earl Metcalf, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petition for certiorari of William Simpson (Simpson or petitioner), to review a final decree of the Appellate Division of the Workers' Compensation Court. That decree affirmed the decision of a trial judge to deny Simpson's petition for reimbursement of college tuition expenses incurred under a vocational rehabilitation plan. In his petition for certiorari, Simpson argued that the trial judge erred as a matter of law in requiring him to show that the employer or the insurance carrier received notice of the contents of the vocational rehabilitation plan pursuant to G.L.1956 (1986 Reenactment) § 28–33–41. For the reasons stated below, we grant the petition for certiorari, quash the judgment of the Appellate Division, and remand this matter to the Workers' Compensation Court with our direction to consider on its merits the propriety of the petitioner's rehabilitation program. The facts insofar as pertinent to this petition follow.

### Facts and Procedural History

On January 8, 1985, petitioner was injured while working as a truck driver for respondent, Dytex Chemical Company. As a result of his injury, petitioner began receiving

workers' compensation benefits, and on April 15, 1987, he was declared partially disabled. On January 11, 1990, petitioner sought vocational counseling at the Division of Vocational Rehabilitation (DVR), and on June 14, 1990, his vocational rehabilitation program was approved by DVR. In accordance with the approved program, petitioner began to attend classes at the Community College of Rhode Island (CCRI).

On December 6, 1991, Simpson filed an employee's petition to review, alleging that respondent had failed to reimburse him for educational rehabilitation costs totaling $1,010.25 for classes at CCRI. Following a pretrial conference, a judge of the Workers' Compensation Court denied the petition on the grounds that petitioner had failed to show that respondent had received notice and been afforded an opportunity to respond to the rehabilitation program approved by DVR. On March 3, 1992, petitioner responded by filing a claim for trial to the Workers' Compensation Court. The case was heard on May 4, 1992, June 23, 1992, September 16, 1992, and January 8, 1993.

At trial, petitioner testified that pursuant to a plan devised by his vocational rehabilitation counselor, he had enrolled at CCRI to pursue a course in social work. The petitioner stated that he had completed approximately three-quarters of a two-year course, maintaining a 3.5 grade point average out of a possible 4.0 average. The petitioner further stated that he had personally expended approximately $3,000 for the classes at CCRI.

The petitioner's vocational rehabilitation counselor, Debra Jane Marshall (Marshall), testified that after concluding that petitioner was unable to return to his former employment as a truck driver, she developed an individualized rehabilitation program that would qualify petitioner as a substance abuse counselor. The plan was approved by the DVR on June 14, 1990, and petitioner began his training at CCRI in that same month. Marshall also testified that no notice was sent to respondent or to Travelers Insurance Company, the insurance carrier on the risk, informing them of the contents of the vocational rehabilitation program prior to the plan's approval by DVR.

In a decree entered on March 17, 1993, the trial judge denied and dismissed Simpson's petition, noting in his decision that the Legislature had prescribed, in § 28–33–41(b)(4),[1] the process for approving a vocational rehabilitation program. The trial judge concluded that pursuant to that statute, an insurance carrier or a self-insured employer must be notified of the contents of the proposed rehabilitation plan prior to the approval of any such program and must be provided an opportunity to respond to the plan. The trial judge found that petitioner had failed to prove that respondent had not reimbursed him for reeducation costs incurred at CCRI and that petitioner had failed to prove that prior to the approval of the rehabilitation program, the insurance carrier had been notified of the contents of the proposed program and been provided an opportunity to respond to the program.

On March 17, 1993, petitioner filed a claim of appeal to the Appellate Division of the Workers' Compensation Court. On appeal, petitioner contended that the trial judge erred as a matter of law inasmuch as the Workers' Compensation Act as it existed at the time petitioner was injured and at the time his rehabilitation program was approved by DVR did not require that notice of the plan be provided to the insurance carrier or the self-insured employer.

At a show cause hearing held on August 30, 1993, the Appellate Division affirmed the decision of the trial judge and entered a final decree on October 4, 1993. Simpson's petition for issuance of a writ of certiorari was

---

1. The parties have referred to this section of the statute in question as G.L.1956 (1986 Reenactment) § 28–33–41(b)(4), its designation when it was amended by P.L.1990, ch. 337, § 1. See *post*. It appears, however, that the current correct designation of the section should be § 28–33–41(b)(3), the designation we shall employ hereinafter. We reached this conclusion by comparing the numbering of sections in the 1990, 1992, 1993, and 1994 amendments to § 28–33–41 and the fact that page 181 of the 1994 supplement to volume 5 of the General Laws omits the designation (b)(1) before the words "Any employer or any injured employee * * *," in the paragraph between "[ (a) ](2) To this end, * * *" and "(2) Action shall be taken * * *." *See* Appendix.

filed on October 25, 1993, pursuant to G.L. 1956 (1986 Reenactment) § 28–35–29, and was granted by this court on May 26, 1994.

**Is Issue of Notice Properly Raised on Appeal?**

██ It is well settled that this court will not consider an issue raised for the first time on appeal that was not properly presented before the trial court. *Rhode Island Hospital Trust National Bank v. deBeru,* 553 A.2d 544, 547 (R.I.1989); *State v. Burke,* 522 A.2d 725, 731 (R.I.1987); *Greenwood v. Rahill,* 122 R.I. 759, 764, 412 A.2d 228, 230 (1980). In the instant case, petitioner argued on appeal that notice to the employer and/or insurer pursuant to § 28–33–41(b)(3) was not required at the time his vocational rehabilitation program was approved in June 1990. The respondent contended that because petitioner did not raise this issue at trial, he could not properly raise it on appeal.

We are of the opinion that there is sufficient evidence in the record to demonstrate that the issue of notice was raised at trial. First, the transcript reveals that Simpson raised this issue at the beginning of trial by noting that his petition had been denied at pretrial "because the carriers didn't receive notice of the fact (petitioner) was undergoing a rehabilitation program." Second, in his reasons for appeal, petitioner argued that the trial judge erred as a matter of law in determining that petitioner was required to demonstrate that the employer or the insurer had received notice of the contents of his rehabilitation plan pursuant to § 28–33–41. It is evident, therefore, that the question of whether the notice requirement in § 28–33–41(b)(3) applied was raised at trial, and hence Simpson's petition is properly before this court.

**The Requirement of Notice to Employer and/or Insurer of a Vocational Rehabilitation Program Prior to Its Approval by the DVR**

On appeal, petitioner contended that the trial judge erred as a matter of law in requiring petitioner to demonstrate that the employer and/or insurance carrier had received notice of petitioner's vocational rehabilitation plan and had had an opportunity to respond to it pursuant to § 28–33–41 because the law

as it existed at the time petitioner's plan was approved by DVR did not require him to give such notice. The respondent, on the other hand, argued that petitioner should not be reimbursed for costs incurred as a result of a rehabilitation plan in circumstances in which neither the insurer nor the employer received any prior notice of the plan.

██ On certiorari this Court does not weigh the evidence but rather reviews the record in order to determine whether legally competent evidence supports the findings of the tribunal whose decision is under review. *Ryan v. Zoning Board of Review of New Shoreham,* 656 A.2d 612, 615 (R.I.1995); *Taft v. Pare,* 536 A.2d 888, 889–90 (R.I.1988); *Ervin v. Ervin,* 458 A.2d 342, 344 (R.I.1983); *Zeilstra v. Barrington Zoning Board of Review,* 417 A.2d 303, 307 (R.I.1980). Accordingly, we must ascertain whether any legally competent evidence exists to sustain the conclusion that petitioner was required, pursuant to § 28–33–41, to show that the employer or the insurance carrier had notice of and an opportunity to respond to the contents of his vocational rehabilitation program.

The applicable sections of § 28–33–41, as they existed on June 14, 1990, provided:

"(c) Compensation payments shall not be diminished or terminated while the employee is participating in a rehabilitation program approved by the director and/or the division of vocational rehabilitation; Provided, however, That compensation payments shall be suspended while an injured employee wilfully refuses to participate in a rehabilitation program approved by the director and/or the division of vocational rehabilitation.

\* \* \*

"(e) The employer shall bear the expense of rehabilitative services agreed to or ordered pursuant to this section."

The rehabilitation plan that DVR developed for petitioner was approved by DVR on June 14, 1990. On July 12, 1990, however, § 28–33–41 was amended by P.L.1990, ch. 337, § 1, which added subsection (b)(4)—now (b)(3), *see* note 1 *supra*—that provides:

"Prior to the approval of any rehabilitation program by the director, the insurance carrier or self-insured employer and the injured worker must be notified of the contents of the proposed program and provided an opportunity to respond to it."

Most important to our determination of the applicability of this section to the case at bar is § 2 of ch. 337, of P.L.1990 which provided,

"This act shall take effect upon passage and *apply to any rehabilitation program submitted thereafter* regardless of the date of the employee's injury." (Emphasis added.)

In denying Simpson's petition in the instant case, the trial judge applied the July 1990 amendments. The petitioner's rehabilitation program was approved on June 14, 1990, but the requirement that the employer or the insurance carrier receive notice or an opportunity to respond became effective on July 12, 1990. It is clear that on the basis of the unequivocal mandate of § 2, we must apply P.L.1990, ch. 337, prospectively, and thus we are compelled to conclude that the trial judge erred in applying § 28–33–41(b)(3) retroactively. Consequently, we conclude that by obtaining the approval of DVR prior to undertaking his rehabilitation program, petitioner complied with the law as it existed at the time of his request.

The respondent further argued that petitioner is not entitled to recovery of tuition expenses because he failed to comply with § 28–33–41(e), which mandates that an "employer shall bear the expense of rehabilitative services agreed to or ordered pursuant to this section." We conclude that the Appellate Division erred in determining that petitioner had failed to comply with the procedure set forth in § 28–33–41(e). The employer, respondent here, never agreed to any rehabilitative services to assist petitioner. After respondent refused petitioner's request for reimbursement of tuition, however, Simpson in fact filed a petition, pursuant to § 28–33–41(e), to obtain a court order for payment. His petition was denied on the grounds that Simpson had violated the notice requirement in § 28–33–41(b)(3), with no consideration of the merits of petitioner's claim for reimbursement.

Because we have held that the provisions of § 28–33–41(b)(3) do not apply in this case, we conclude that the Appellate Division erred as a matter of law in refusing reimbursement on that basis. Therefore, the petition for certiorari is granted, and the final decree of the Appellate Division is quashed.

We remand the case to the Workers' Compensation Court for a determination on the merits of the propriety of the petitioner's rehabilitation program and of subsequent reimbursement of expenses in the event the rehabilitation program is deemed appropriate by the court.

### APPENDIX

G.L.1956 (1986 Reenactment)

1994 Vol. 5 Cumulative Supplement

**28–33–41. Rehabilitation of injured persons—Panel of rehabilitation advisors—Reports required.**—(a)(1) The department and the workers' compensation court shall expedite the rehabilitation of and the return to remunerative employment of all disabled employees injured subject to chapters 29–38 inclusive of this title.

Rehabilitation means the prompt provision of appropriate services necessary to restore an occupationally injured or diseased employee to his or her optimum physical, mental, vocational and economic usefulness. This may require medical, vocational, and/or reemployment services to restore an occupationally disabled employee as nearly as possible to his or her pre-injury status. As a procedure, rehabilitation may include three (3) overlapping and interrelated components:

(A) Medical restorative services—medical treatment and related services needed to restore the occupationally disabled employee to a state of health as near as possible to that which existed prior to the occupational injury or disease. Such services may include, but are not limited to, the following: medical, surgical, hospital, nursing services, attendant care, chiropractic care, physical therapy, occupational therapy, medicines, prostheses, orthoses, other physical rehabilitation ser-

vices, including psychosocial services, and reasonable travel expenses incurred in procuring such services.

(i) Treatment by spiritual means.—(1) Nothing in this chapter shall be construed to require an employee who in good faith relies on or is treated by prayer or spiritual means by a duly accredited practitioner of a well recognized church to undergo any medical or surgical treatment, and weekly compensation benefits may not be suspended or terminated on the grounds that such employee refuses to accept recommended medical or surgical benefits. Such employee shall submit to all physical examinations as required by this title, chapters 29–38, inclusive.

(2) However, a private employer, insurer, self-insurer, or group self-insurer, may pay or reimburse an employee for any costs associated with treatment by prayer or spiritual means.

(B) Vocational restorative services—vocational services needed to return the disabled employee to his or her pre-injury employment or, if that is not possible, to a state of employability in suitable alternative employment. Such services may include, but are not limited to, the following: psychological and vocational evaluations, counseling and training.

(C) Reemployment services—services used to return the occupationally disabled employee to suitable, remunerative employment as adjudged by his or her functional and vocational ability at that time.

(a)(2) To this end, there is hereby created a panel of workers' compensation medical advisors consisting of physicians, psychologists, ergonomists, and physical and vocational rehabilitation specialists who shall be appointed by the director as herein provided. Upon request, members of the panel shall advise the director in matters pertaining to rehabilitation of injured workers whose condition is reported to the director as provided herein.

(b)(1) Any employer or any injured employee with total disability or permanent partial disability to whom the insurance carrier or certificated employer has paid compensation for a period of three (3) months or more, and to whom compensation is still being paid, or his or her employer or insurer may submit a proposal for a rehabilitation program to the director for approval.

(2) Action shall be taken as in the judgment of the director shall seem practicable and likely to speed the recovery and rehabilitation of injured workers; provided, however, that rehabilitative services shall be appropriate to the needs and capabilities of injured workers.

(3) Prior to the approval of any rehabilitation program by the director, the insurance carrier or self-insured employer and the injured worker must be notified of the contents of the proposed program and provided an opportunity to respond to it.

(c) Compensation payments shall not be diminished or terminated while the employee is participating in a rehabilitation program approved by the director, or while a proposal for approval of a rehabilitation plan has been filed with the department of labor prior to the date on which an employer's petition to reduce or terminate benefits has been filed, while such plan is pending approval by the director.