Patricia CALLAGHAN

v.

RHODE ISLAND OCCUPATIONAL IN-
FORMATION COORDINATING COM-
MITTEE/INDUSTRY EDUCATIONAL
COUNCIL OF LABOR, et al.

Nos. 96–536–MP, 96–537–MP.

Supreme Court of Rhode Island.

Dec. 11, 1997.

Bernard W. Boyer, Providence, for Plaintiff.

Howard L. Feldman, Providence, Alan J. Cooke, Joseph C. Tanski, Boston, MA, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

These consolidated cases came before the Supreme Court on petitions for certiorari in respect to a final decree of the Appellate Division of the Workers' Compensation Court (Appellate Division). Employee Patricia Callaghan (Callaghan) sought review of the Appellate Division's reversal of one of two cost-of-living adjustments (COLAs) granted to her by a trial judge of the Workers' Compensation Court. The Rhode Island Insurers' Insolvency Fund (fund) sought review of the Appellate Division's imposition of a 20 percent penalty fee for the fund's failure to pay the remaining COLA in a timely manner and of an award of attorney's fees to Callaghan. For the reasons set forth below, we deny and dismiss both petitions. The facts insofar as pertinent to these petitions follow.

## Facts and Procedural History

Callaghan suffered a work-related injury on June 1, 1990, while employed by the Rhode Island Occupational Information Coordinating Committee/Industry Educational Council of Labor (council). At the time of the injury, the council's insurer was American Universal Insurance Company (American Universal). A memorandum of agreement dated September 21, 1990, provided for the payment of weekly workers' compensation benefits to Callaghan as of June 2, 1990, for total incapacity due to carpal tunnel syndrome. American Universal was declared insolvent by the Rhode Island Superior Court on January 8, 1991, at which time the fund became obligated to pay covered claims that existed prior to the determination of the insurer's insolvency. G.L.1956 § 27–34–8(a)(1).

On March 5, 1993, Callaghan filed with the Workers' Compensation Court (WCC) a petition for review of the memorandum of agreement, seeking a COLA effective May 1992. Callaghan had not received a COLA since she began receiving workers' compensation benefits in 1990. Following a pretrial conference, a WCC trial judge issued a pretrial order on March 26, 1993, granting Callaghan's petition and awarding two COLAs, retroactive to June 2, 1991, and June 2, 1992—the dates corresponding to the anniversary of her total incapacity. The pretrial order denied penalties and interest on the COLAs.

On March 31, 1993, Callaghan filed a claim for a trial to the WCC, pursuant to G.L.1956 § 28–35–20(d). Although Callaghan waived any rights to the payment of interest on the COLAs, she contended that, pursuant to statute, she was entitled to 20 percent of the amount of the awarded COLAs as a penalty for late payment of the COLAs. In February 1995, Callaghan was once again awarded COLA increases retroactive to June 2, 1991, and June 2, 1992, and was once again denied the 20 percent penalty.

On February 14, 1995, Callaghan filed a claim of appeal to the WCC Appellate Division in which she averred that the WCC trial

judge had erred, inter alia, both by misinterpreting applicable statutes, and thereby denying the 20 percent penalty assessment, and in denying interest payments on the COLAs. Neither party appealed the grant of the two COLAs. On September 27, 1996, the Appellate Division entered a final decree that ordered the fund to pay the 20 percent penalty for its failure to pay Callaghan a COLA in a timely fashion and to pay Callaghan's attorney's fees for both the WCC trial and the appeal, but it denied Callaghan's request for interest on the COLAs. In addition, the Appellate Division reversed the trial court's granting of two COLAs, finding that under the Workers' Compensation Act, Callaghan was entitled to only one COLA as of May 10, 1992.

Pursuant to § 28–35–29, the fund filed a petition for certiorari on October 17, 1996 (No. 96–536–M.P.), asserting that the Appellate Division lacked jurisdiction to interpret or to apply the Rhode Island Insurers' Insolvency Fund Act and that the award of the 20 percent penalty and attorney's fees constituted legal error. Callaghan also filed a petition for certiorari on the same day (No. 96–537–M.P.), contending that the Appellate Division was without jurisdiction to deny one of the COLAs awarded by the WCC trial judge. On October 28, 1996, a stay of the final decree of the Appellate Division was granted by the duty judge, and on November 21, 1996, certiorari was granted in respect to both petitions, the matters were consolidated for briefing and oral argument, and the stay was continued until further order of this Court.

### Standard of Review

It is well settled that this Court does not engage in weighing evidence on certiorari but, rather, reviews the record to determine "whether legally competent evidence supports the findings of the tribunal whose decision is under review." *Simpson v. Dytex Chemical Co.,* 667 A.2d 1229, 1231 (R.I.1995) (citing, inter alia, *Ryan v. Zoning Board of Review of New Shoreham,* 656 A.2d 612, 615 (R.I.1995)). Moreover, if such evidence exists, the findings of the tribunal, in this case the Appellate Division, are binding upon this Court, absent fraud. *Forte v. Fernando Originals, Ltd.,* 667 A.2d 780, 782 (R.I.1995) (citing *Falvey v. Women and Infants Hospital,* 584 A.2d 417, 419 (R.I.1991)).

### Appellate Division's Jurisdiction to Reverse Trial Court Award

We address first the single claim raised in Callaghan's petition, namely, that because none of the parties appealed the award of the two COLAs, the Appellate Division erred in eliminating one of the COLAs awarded by the WCC. Specifically, Callaghan claimed that the Appellate Division "was without any jurisdiction to deny a 'COLA' granted by the Trial Judge when there was no appeal by the [council or the fund] nor, obviously, any reason of [*sic* ] appeal." [1]

It is axiomatic that issues not properly brought before appellate tribunals are deemed to have been waived by the parties. *Simpson,* 667 A.2d at 1231; *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.,* 640 A.2d 950, 959 (R.I.1994). But an appellate court is not required to overlook a fact, such as an arithmetical error, that, once perceived, is controlling in respect to the issue before the tribunal. In *George W. Smith & Son, Inc. v. Cimini,* 692 A.2d 340 (R.I.1997) (mem.), for example, this Court recalculated *sua sponte* the statutory interest on indebtedness to which the plaintiff was entitled after recognizing that the Superior Court justice had committed an arithmetical error in his calculation of the interest. And in reviewing a case decided by the former Workmen's Compensation Commission, this Court acknowledged the principle that the full commission "lacked jurisdiction" to consider an appeal in any respect save that propounded by the parties, but held that the full commission was not barred from amending a decree to include the essential finding of the claimant's average weekly wage, which finding had been omitted when the case was heard at the single commissioner stage.

---

1. Callaghan did not seek review of the Appellate Division's denial of interest payments on the COLAs.

*Corrado v. Brown University*, 98 R.I. 256, 260–62, 201 A.2d 29, 31–32 (1964).

The Workers' Compensation Act delineates the authority of the Appellate Division, providing in pertinent part that

"[a]ny person aggrieved by the entry of a decree by a [Workers' Compensation Court] judge may appeal to the appellate division * * *. [An] appellate panel [of the court] shall forthwith review the decree upon the record of the case and shall file a decision *pursuant to the law and the fair preponderance of the evidence * * *.* Upon consideration of the appeal, the appellate panel shall *affirm, reverse, or modify the decree appealed from, and may itself take such further proceedings as just * * *.*" (Emphases added.) G.L.1956 § 28–35–28(a).

Of particular importance in the case before us is the fact that the Appellate Division's express authority to affirm, to reverse, to modify the decree appealed from, and to "itself take such further proceedings as just" was introduced into § 28–35–28 in 1990, by P.L.1990, ch. 332, art. I, § 5.

■ In the case before us, the Appellate Division determined that the WCC trial judge had erred as a matter of law in awarding two COLA increases, effective June 2, 1991, and June 2, 1992, to Callaghan, who was found to be totally incapacitated as of June 2, 1990. The award of COLAs is governed by G.L.1956 § 28–33–17(f)(1), which provides that

"[w]here any employee's incapacity is total and has extended beyond fifty-two (52) weeks, *regardless of the date of injury,* payments made to all such totally incapacitated employees shall be increased as of May 10, 1991, and *annually on the tenth (10th) of May thereafter* so long as the employee remains totally incapacitated." (Emphases added.)

Applying the statute, the Appellate Division reasoned that

"the employee really has a two-part burden in cases seeking a cost of living adjustment. The employee must demonstrate A) that they are totally disabled as of May 10, and B) that this total incapacity has extended beyond fifty-two (52) weeks. A review of the stipulation entered by the parties here reveals that [Callaghan] first satisfied both of these conditions on May 10, 1992, and would therefore be entitled to a COLA only as of that date."

The parties stipulated that Callaghan was rendered totally incapacitated on June 2, 1990. Consequently, on May 10, 1991, Callaghan had not been totally incapacitated for a period beyond fifty-two weeks, and therefore, she was not eligible for a COLA award at that time. The next date of eligibility under the statute was May 10, 1992, the date in fact that Callaghan herself cited in her initial 1993 petition to the WCC, in which she requested "that the respondent be ordered to pay cost of living increase *effective May, 1992.*" (Emphasis added.)

Under the delineation of powers set forth in § 28–35–28, *see ante*, the Appellate Division, in considering an appeal, is granted express authority to "modify the decree appealed from" and to "take such further proceedings as [are] just." We are led to conclude, therefore, that the Appellate Division did not err in issuing a decree that was consonant with a plain and ordinary reading of the statute governing COLA awards. *See Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996) ("[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."). Moreover, we have affirmed the judgment of the Appellate Division in similar cases. For example, in *Forte*, 667 A.2d at 782–83, this Court affirmed the Appellate Division's modification of a trial judge's computation of an employee's weekly earnings in circumstances in which the trial court was clearly in error in not complying with the statutory method for computing wages.

Here, because legally competent evidence existed to support the Appellate Division's determination that Callaghan was entitled to one COLA only, we conclude that the Appellate Division did not err in modifying the WCC decree to ensure its compliance with § 28–33–17(f)(1).

## Appellate Division's Imposition of 20 Percent Penalty and Attorney's Fees

We turn next to the claims of the fund, which petitioned this Court to review the Appellate Division's order that the fund pay Callaghan's attorney's fees as well as a fee equal to 20 percent of the approved COLA. Central to our analysis of the fund's claim in this regard is § 28-33-17(f)(5),[2] which provides that computations for COLA payments to totally incapacitated individuals

"shall be made by the director of labor and promulgated to insurers and employers making payments required by this section. Increases shall be paid by insurers and employers without further order of the court. If payment payable under this section is not paid within fourteen (14) days after the employer or insurer has been notified or it becomes due, whichever is later, there shall be added to the unpaid payment an amount equal to twenty percent (20%) thereof, which shall be paid at the same time as, but in addition to the payment."

The fund contested the orders of the Appellate Division on several grounds, and we address each claim separately.

**■ Statutory Authority.** The fund argued that "[t]he Workers' Compensation Act contains no provision which allows the workers' compensation court to exercise jurisdiction to interpret or apply the Rhode Island Insurer's Insolvency Fund Act or impose penalties upon the Fund in contravention of the [Insolvency Fund] Act." With this contention we must disagree.

We begin by pointing out the WCC's express authority pursuant to G.L.1956 § 28-30-1(a), which provides that

"[t]here shall be established in the state of Rhode Island a workers' compensation court * * * *having such jurisdiction as may be necessary to carry out its duties under the provisions of the Workers' Compensation Act* * * * except those provisions of the act which establish violations

of the act as crimes, offenses, or misdemeanors." (Emphasis added.)

In interpreting this statutory framework of the WCC, this Court has stated:

"It is our opinion that in the enactment of § 28-30-1 the legislature was conferring full and general jurisdiction in connection with all matters relating to workmen's compensation on the commission which the statute creates. * * * To hold that the legislature, in transferring jurisdiction of workmen's compensation cases from the superior court, intended that the commission it created for that purpose would establish a forum not fully effective is repugnant to reason and wholly untenable." *Segrella v. Workmen's Compensation Commission,* 91 R.I. 282, 287, 162 A.2d 810, 813 (1960).

In the instant case, the Appellate Division found that Callaghan was entitled by law to a COLA award. Having determined that payment of the COLA had not been rendered in a timely fashion, the Appellate Division was then confronted with the task of assessing the obligation of the fund to pay the statutorily imposed penalty for failure to make prompt payment. Integral to this determination was an interpretation and application of the Rhode Island Insurers' Insolvency Fund Act.

The fund's constrained view of the jurisdiction of the WCC repudiates our pronouncement in *Segrella* and contravenes the well-settled principle that the Workers' Compensation Act is to be liberally construed to effectuate its purpose. *See, e.g., Mendes v. ITT Royal Electric,* 648 A.2d 1358, 1360 (R.I. 1994) (per curiam); *DeNardo v. Fairmount Foundries Cranston, Inc.,* 121 R.I. 440, 452, 399 A.2d 1229, 1236 (1979) (Kelleher, J., concurring) ("[T]he [Workers' Compensation] Act's provisions must be given a liberal construction with an eye to effectuating their evident humanitarian purpose."). Because a determination of the fund's obligation with respect to the COLA penalty is essential to the outcome of the case, we are of the opinion that the WCC, pursuant to § 28-30-1, may interpret and apply the Rhode Island

---

2. This provision was formerly codified at G.L. 1956 § 28-33-17(f)(4), as amended by P.L.1992, ch. 31, § 5, and was redesignated at § 28-33-17(f)(5) pursuant to P.L.1995, ch. 323, § 1.

Insurers' Insolvency Act to the extent necessary to determine the fund's obligations under the Workers' Compensation Act.

**■ *Attorney's Fees and 20 Percent Penalty: Sanction or Obligation, Punitive or Remedial?*** The fund also argued that it should not have to pay the 20 percent penalty and the award of attorney's fees. It asserted that these sums do not fall within the definition of "covered claim" under the Rhode Island Insurers' Insolvency Fund Act "because [they] did not arise out of and [were] not within the coverage of the Council's insurance policy with American." In arguing that it was not obligated to pay these amounts, the fund further contended that the 20 percent penalty constituted punitive or exemplary damages that the statute expressly exempts the fund from paying. We disagree.

With respect to the fund's first objection, we note that we have previously rejected similar arguments. For example, in *Jerry's Supermarkets, Inc. v. Rhode Island Insurers' Insolvency Fund*, 692 A.2d 697, 698 (R.I. 1997), this Court rebuffed the fund when it contended that "pre- and postjudgment interest arise from statute, not from the policy's coverage, and hence do not fall within the act's definition of covered claims."

Turning to the second contention, we note that the definition of a "covered claim" under the Rhode Island Insurers' Insolvency Fund Act states that

" '[c]overed claim' means an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer on or after July 1, 1988." G.L.1956 § 27–34–5(8).

Section 27–34–5(8)(ii) goes on to explain that the term "covered claim" "shall not include any amount: (A) Awarded as punitive or exemplary damages." In determining that the fund was obligated to pay the 20 percent penalty for its failure to pay Callaghan's COLA in time, the Appellate Division reasoned:

"The facts reveal that [Callaghan] was seeking payment of a May 1992, cost of living increase. As of January 8, 1991, American was declared insolvent and the Insolvency Fund became responsible to pay all 'covered claims' existing prior to the declaration of insolvency. Pursuant to this responsibility, the Insolvency Fund was subsequently required to pay [Callaghan her] workers' compensation benefits and cost of living increases pursuant to the Workers' Compensation Act. The penalty was incurred because the Insolvency Fund failed to meet its own responsibilities to pay the cost of living increase in May of 1992."

In our view, the Appellate Division correctly concluded that the 20 percent penalty was not, as the fund had contended, a punitive or an exemplary award prohibited by § 27–34–5(8), and pointed out that a party seeking punitive damages is required to produce "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, that * * * ought to be punished." *Allen v. Simmons*, 533 A.2d 541, 543 (R.I.1987) (quoting *Morin v. Aetna Casualty and Surety Co.*, 478 A.2d 964, 967 (R.I.1984)). Moreover, whereas the question of whether punitive damages are appropriate in a given case is a question of law to be decided by the court, *Morin*, 478 A.2d at 967, once a court determines that such damages may appropriately be awarded, "such an award is discretionary with the finder of fact." *Id.* Such is not the situation before us. Here, in contrast, § 28–33–17(f)(5) provides a nondiscretionary, prescribed penalty for delinquent payment and requires no showing of misconduct. As we have explained in construing G.L.1956 § 28–35–43, which provides a 20 percent penalty for failure to pay workers' compensation benefits following an order or a decree of the WCC, "by enacting penalties for delinquent payments, the Legislature intended to encourage prompt payment [of awards]." *Matias v. Davol, Inc.*, 457 A.2d 1063, 1064 (R.I. 1983). There, as here, the penalty is remedial, not punitive.

With respect to the issue of the award of attorney's fees, we point out that § 28–35–32,

provides that in proceedings under the Workers' Compensation Act, "costs shall be awarded, including counsel fees * * * to employees who successfully prosecute * * * petitions to amend a * * * memorandum of agreement." Because we affirm that the 20 percent penalty was a "covered claim" that the fund was obligated to pay, the award of attorney's fees was properly ordered by the Appellate Division.

■ *Fund as Insurer.* The fund also maintained that because it "is not an insurance company[,] * * * has not contracted with any employer to pay compensation[,] * * * [and] issues no policies and collects no premiums," it is not an insurer and therefore cannot be penalized under § 28–33–17(f). Callaghan, in contrast, argued that the Fund "stands in the shoes of the insurer" and, as such, is obligated to the extent that the insolvent insurer would have been obligated. The fund conceded in its brief to this Court that the Workers' Compensation Act "does not define the term 'insurer.'" We decline to adopt the fund's limited characterization of its role, and we concur with Callaghan that the fund stands in the shoes of the insolvent insurer, and thereby assumes the insurer's obligations.

We reach this conclusion as a consequence of the Legislature's directive that "[t]he Fund shall: * * * (2) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." Section 27–34–8(a). A plain reading of the statute, combined with our holding that the 20 percent penalty and attorney's fees constitute "covered claims" in the instant case, *see ante*, suffice to support the conclusion that the fund stands as an insurer subject to § 28–33–17(f).

Our reasoning in *Jerry's Supermarkets, Inc. v. Rhode Island Insurers' Insolvency Fund*, 692 A.2d 697 (R.I.1997), also lends support to our rejection of the fund's position on this issue. The insurer appealed an adverse judgment of liability, and when it later was decreed insolvent, the fund took over the appeal. After this Court affirmed the Superior Court judgment against the insurer, *Jer-*

*ry's Supermarkets, Inc. v. Rumford Property and Liability Insurance Co.*, 586 A.2d 539 (R.I.1991), the fund paid the judgment, and the plaintiff then filed a complaint in the Superior Court seeking interest on the judgment. Following the granting of the fund's motion for summary judgment, the plaintiff, relying in part on the language of § 27–34–8(a)(2), appealed to this Court. We held, in reasoning that is equally applicable to the case before us, that

> "the purposes of the [Rhode Island Insurers' Insolvency Fund A]ct will best be effectuated by *ensuring that the insolvency fund discharges its obligations in a timely fashion.* * * * [Although the fund] should not be held accountable for delays attributable to the insurer * * * [it] is obligated to pay statutory interest on the judgment against Rumford for the period beginning with the fund's assumption of Rumford's appeal of the Superior Court's judgment until * * * the date the fund paid the * * * judgment. *At the time the fund took over the appeal, the claim had been reduced to judgment and thus became a covered claim. At that point, the fund stood in the shoes of the insolvent insurer.*" (Emphases added.) *Jerry's Supermarkets, Inc.*, 692 A.2d at 698.

There, as here, the pre-existence of a covered claim rendered the fund the equivalent of the insurer. At the time American Universal was decreed insolvent, it was obligated to provide adequate worker's compensation to Callaghan. The fund, by statute, then stepped in and assumed American Universal's extant covered claims, inclusive of the obligation to pay COLAs for injured employees covered at the time of the insolvency *and* the concomitant obligation to pay a penalty in the event that a COLA was not timely paid. Therefore, the fund stood in the place of an insurer in respect to its obligations to Callaghan under § 28–33–17(f).

■ *Fund Immunity.* Last, the fund claimed immunity from liability for the 20 percent penalty and award of attorney's fees. Specifically, the fund contended that G.L. 1956 § 27–34–16, the so-called immunity clause, "is obviously intended to limit the

Fund's exposure for liabilities arising out of the Fund's acts or failures to act," and that the statute "bars recovery of late payment penalties and attorney's fees." Section 27–34–16, provides that

"[t]here shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the fund, or its agents or employees, the board of directors, or the commissioner or his or her representative for any action taken or not taken by them in the performance of their powers and duties under this chapter."

The term "liability," however, "is a broad legal term * * * [that] has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely." Black's Law Dictionary 914 (6th ed.1990). To construe § 27–34–16 so as to abrogate the fund's obligation to pay the penalty for a late COLA payment or its duty to pay attorney's fees before the WCC would contravene the legislative purpose behind the Rhode Island Insurers' Insolvency Fund Act, namely, "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer * * *." Section 27–34–2. Certainly, with respect to the penalty for late COLA payments and the payment of applicable attorney's fees, the immunity provision is violative of the fund's and the WCC's statutory purposes, and is therefore inapplicable to those assessments.

In conclusion, therefore, in light of the foregoing analysis, we deny and dismiss both petitions for certiorari, quash the writs improvidently issued, vacate the stay previously imposed, and affirm the final decree of the Appellate Division, to which the papers in this case may be returned with our decision endorsed thereon.