**John J. SMITH**

v.

**Donald J. BEAUMIER et al.**

**No. 96–352–Appeal.**

Supreme Court of Rhode Island.

Dec. 18, 1997.

Matthew L. Lewiss, Westerly, for Plaintiff.

Arlene M. Violet, E. Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURICER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter came before the Supreme Court on November 10, 1997, pursuant to an order directing both parties to appear and show cause why the issues raised in the defendants' appeal from a final judgment denying their motion for new trial filed in the Superior Court should not be summarily decided.

After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

In the summer of 1986, plaintiffs, John J. and Frances C. Smith (the Smiths), became interested in purchasing a campground locat-ed in part in the towns of Exeter and West Greenwich, Rhode Island. That campground was owned by the defendants, Donald J. and Joan J. Beaumier (the Beaumiers). From October 1986 to May 1987, the Smiths met with the Beaumiers on numerous occasions to discuss and negotiate the sale of the campground. The Smiths, in addition, often visited the campground, occasionally bringing along with them relatives or associates to offer them advice about the possible purchase of the property. The negotiations with the Beaumiers resulted in a sales and title closing on May 22, 1987.

The night before the closing, however, the Beaumiers informed the Smiths that they would be unable to spend the week after the closing, which was coincidentally Memorial Day week, at the campground as originally planned and promised, giving as reason, "[W]e got things we got to do." Therefore, the Smiths, lacking any previous experience in the operation of a campground, or in operating any other commercial business for that matter, were left on their own to tend to the operation of the campground over the busy Memorial Day weekend. At the closing, the Smiths were given only the Beaumiers' post office box for the Smiths to contact them in the event the Smiths had any questions.[1]

Unfortunately many problems surfaced at the campground during that Memorial Day weekend and during the following week. At the time of the purchase, the campground swimming pool did not have water in it. Because they were busy with other campground activities, the Smiths had no time to fill the swimming pool with water until the week after Memorial Day. They then discovered that after they filled the pool, the water level dropped some three inches and they had to repeatedly add water into the pool. The only available person who knew where the Beaumiers resided, Hugh Gordon (Gordon), an employee of the campground, went to the Beaumiers to inquire of them what they thought caused the swimming pool

---

1. An employee of the campground, Hugh Gordon (Gordon), was apparently the only person who actually knew where the Beaumiers lived. On occasion he was able to go to their house and personally ask them questions. However, that event did not occur frequently. Nothing in the record suggests that the Smiths ever asked Gordon what the Beaumiers address was or whether he knew their phone number.

problem. They informed Gordon that one of the electrostatic valves at the bottom of the pool often got clogged with debris and had to be cleaned. The Smiths then cleaned the valves, but the pool continued to lose water. After experimenting with the right- and left-side filtering systems, the Smiths discovered that there was a defect in the right-side filtering system and pump and that in order to maintain a constant level of water in the pool, they had to use only the left-side filtering system and pump. The use of just one filter and pump failed to adequately cleanse the pool, requiring a higher content of chlorine to be used on a continuing basis. The Smiths, in addition, had to place two motors on the one working filter and pump in order to maintain it in working order, at a cost to them of some $500. The right-side filter and pump never functioned properly from the date of the sale.

During the Memorial Day weekend, immediately following the closing, the septic tank for the campground began to overflow into the campground restroom area. The septic tank had to be pumped out twice that weekend, and has required pumping out at least once a year thereafter. At trial, the Smiths asserted that the Beaumiers had represented to them prior to the sale that they had not been required to pump out the septic tank in eleven years and that they had experienced no problems with the system during that time.[2] The repairs to the septic system costs the Smiths some $14,000.

In addition to the swimming pool and septic system dilemmas, the Memorial Day weekend greeted the Smiths with numerous electrical problems at their new campground. The circuit breakers kept cutting off electrical power even when only very low voltage was being used at the campground. The Smiths were forced to suffer through the summer with the electrical problems, and were eventually forced to rewire the entire campground in November of 1987 at a cost of approximately $20,000. According to the Smiths, the Beaumiers had represented to

them that the electrical system, while not new, was functionable and would not have to be replaced for "a couple of years."

In addition to previously noted problems encountered by the Smiths after their takeover of the campground, the Smiths also noticed that several fixtures that they had seen and believed were part of the purchase and sale were missing. Those missing items included cobblestones that had been laid in the ground, fluorescent lighting in the workshop area, four picnic tables on the campground, and roughly thirty sheets of plywood that had been stored on the rafters in the campground workshop area.

Overwhelmed by their suddenly discovered bag full of problems and defects, the Smiths filed a civil action against the Beaumiers in the Superior Court on August 1, 1988, alleging therein misrepresentation, breach of contract, breach of express and implied warranties, and unauthorized removal of items included in the sale. Following a jury trial on their complaint, the jury returned a verdict in their favor and judgment thereon was entered for the Smiths in the amount of $23,476.37, with interest of $23,432.63, for a final award totaling $46,959. The Beaumiers moved for a new trial, alleging that there was no evidence presented to prove that Joan J. Beaumier (Joan) individually had made any misrepresentations to the Smiths and that there was no evidence presented to support the jury's finding that there were specific misrepresentations made by Donald J. Beaumier (Donald) about the sewer system or the electrical system. That motion was denied. The Beaumiers appeal from that denial.

 The Beaumiers now assert that Joan never made any misrepresentations that were relied upon by the Smiths. They also contend that there were no misrepresentations made by either Joan or Donald with respect to the electrical or the septic system at the campground during the negotiations

2. The Smiths had noticed, during their visits to the campground prior to their purchase of it, a wet and soggy area where the leach field for the septic system was located. However, according to the Smiths, when they asked the Beaumiers

about the wet area, the Beaumiers told them that it was caused by the rain. Once the Smiths began regular pumping of the septic tank, however, the wet area disappeared.

for the sale of the campground. The Beaumiers also claim, for the first time here on appeal, that the campground was a sole proprietorship owned by Donald and that it was not a partnership in which Joan owned or had an interest. Accordingly, they assert here that any misrepresentations that might have been made by Donald cannot be attributed to Joan, who was merely a campground employee. That sole-proprietorship issue raised by the Beaumiers for the first time before this Court on appeal will not be addressed by this Court because it was not raised at the trial level. *See State v. Leonardo*, 677 A.2d 1336 (R.I.1996); *Simpson v. Dytex Chemical Co.*, 667 A.2d 1229 (R.I. 1995).

■ With regard to the remaining issues raised in the Beaumiers' appeal, we perceive more than sufficient evidence present in the trial record from which the jury could find as it did and upon which reasonable minds could arguably differ. Joan's testimony revealed that she "more or less ran" the campground and that her husband merely "kept up with things," such as fixing the road or a broken pipe. Joan testified that she "did most of the dealing with the people and the public." Joan also testified that she had walked around the campground with the Smiths on their first visit to the campground and that she had taken them around "quite a few" times after that in order for them to view the facilities. She testified that on each of those occasions when she walked around the campground with the Smiths, she would have conversations with them concerning the purchase of the property. Frances Smith's testimony also indicated that when they visited the campground, the Smiths spoke to Joan on occasion about the conditions of the campground. John Smith's testimony also indicated that during some of those discussions Joan was present. Additionally, Donald himself had testified that it was Joan who handled all the discussions regarding the sale of the campground and in fact handled all legal issues arising within the context of running the campground. Accordingly, there was more than sufficient evidence put before the jury upon which reasonable minds could differ concerning whether Joan had made material misrepresentations that were relied upon by the Smiths, and the trial justice in denying the Beaumiers' motion for new trial with respect to the claims asserted against Joan did not err.

■ We likewise conclude that more than sufficient evidence exists in the record before us to support the jury's finding that misrepresentations were made regarding the electrical and the septic systems in place at the campground. Donald's admissions during his testimony that he told the Smiths, with respect to the septic system, "[I]f they are not broke, don't fix it," and that he did not have to pump out the septic system in eleven years, were indicative of his deceptive actions. The Smiths also testified with regard to numerous other misrepresentations that had been made to them concerning the wet area around the septic-system leach field as being caused by rain, and which was later discovered to have actually been caused by the overflowing septic system, as well as their being told that the electrical system would not have to be replaced for "a couple of years." Given that testimony as well as the additional evidence of campground defects in the record, we cannot fault the trial justice for refusing to disturb the jury's verdict in favor of the Smiths.

For all the foregoing reasons, the defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

