*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-565

HORACE E. HENSLEY, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DISTRICT OF COLUMBIA
INSURANCE GUARANTY ASSOCIATION, INTERVENOR.

On Petition for Review of a Decision and Order of the District of Columbia
Department of Employment Services Compensation Review Board
(CRB-33-19(R))

(Submitted September 20, 2021                    Decided September 29, 2022)

Horace E. Hensley, *pro se*.

*Karl Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time of submission, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Ashwin P. Phatak*, Deputy Solicitor General, filed a Statement in Lieu of Brief on behalf of respondent.

*Jillian M. Petrella* was on the brief for intervenor.

Before GLICKMAN, BECKWITH, and MCLEESE, *Associate Judges*.

GLICKMAN, *Associate Judge*: This matter concerns the obligations of the District of Columbia Insurance Guaranty Association (hereafter, the Association), an entity created by D.C. law to pay qualifying claims against insolvent insurance carriers.[1] Petitioner Horace Hensley challenges the Compensation Review Board's (CRB's) decision that the Association is not obligated to pay statutory late-payment penalties for, or interest on, underpayments of his awarded workers' compensation benefits, where those underpayments were made on behalf of his employer's defunct insurer by the Association's counterpart in Maryland, the Maryland Property and Casualty Insurance Guaranty Corporation (PCIGC). We affirm the CRB's decision.

**I.**

Since 1993, when he was found to be permanently and totally disabled, Mr. Hensley has received total disability benefits with supplemental allowances pursuant to the District of Columbia Workers' Compensation Act.[2] These benefits initially were paid by Atlantic Mutual Insurance Company, the carrier of workers'

---

[1] *See* the Property and Liability Insurance Guaranty Association Act of 1993, D.C. Code §§ 31-5501 to 31-5515; *see also Mosley v. Welch*, 830 A.2d 1246, 1248 (D.C. 2003); *Zhou v. Jennifer Mall Rest., Inc.*, 699 A.2d 348, 351-54 (D.C. 1997).

[2] D.C. Code §§ 32-1501 to 32-1545.

compensation insurance for Mr. Hensley's employer. In 2011, however, Atlantic Mutual was liquidated. As Mr. Hensley at all relevant times has resided in Maryland, the PCIGC accepted responsibility for managing and paying his workers' compensation benefits and allowances.[3]

In 2016, Mr. Hensley filed an application for a formal hearing with the Administrative Hearings Division of the District of Columbia Department of Employment Services, asserting that the PCIGC owed him additional supplemental allowance payments under D.C. Code § 32-1506 to reflect cost-of-living increases (referred to as "Cost of Living Allowances" or COLA). Mr. Hensley sought statutory penalties for the late payment of the COLA amounts, pursuant to D.C. Code § 32-1515(f),[4] and accrued interest on the total amount of the underpayment.[5] He

---

[3] Like the Association, the PCIGC is a government-created entity that steps in to pay claims against insolvent insurers. *See Prop. & Cas. Ins. Guar. Corp. v. Yanni*, 919 A.2d 1, 5-6 (Md. 2007). In pertinent part, the IGA Act provides that any person having a workers' compensation claim that "may be recovered under more than one insurance guaranty association or its equivalent . . . , shall seek recovery first from the Association of the residence of the claimant." D.C. Code § 31-5509(b).

[4] When awarded compensation is not paid within ten days after it becomes due, D.C. Code § 32-1515(f) provides "a statutorily mandated twenty-percent penalty." *Daly v. D.C. Dep't of Emp. Servs.*, 121 A.3d 1257, 1261 (D.C. 2015).

[5] The Workers' Compensation Act is silent with respect to the authority to award interest on accrued disability benefits, but the CRB has construed the Act to authorize such awards implicitly, *see, e.g.*, *Cheeks v. WMATA*, CRB No. 14-139,

initially sought late-payment penalties and interest only from the PCIGC, the entity responsible for paying his COLA. Mr. Hensley later impleaded the Association after he learned that the PCIGC might be immune from any obligation to pay the statutory penalties and interest, per the holding of the Maryland Court of Appeals in *Yanni*.[6] Although the Association had not been responsible for paying Mr. Hensley's workers' compensation benefits, and thus had done nothing for which the penalties and interest could have been assessed against it directly, Mr. Hensley contended the Association was obligated to pay his claim for penalties and interest if he could not recover those penalties from the PCIGC itself.

Eventually, after intervening proceedings unnecessary to recount, Mr. Hensley and the PCIGC reached agreement on the amount of the additional COLA

---

2015 DC Wrk. Comp. LEXIS 295 at *8 (Apr. 15, 2015), and this court has endorsed that construction, *see D.C. Pub. Schs. v. D.C. Dep't of Emp. Servs.*, 262 A.3d 213, 224 (D.C. 2021); *D.C. Pub. Schs. v. D.C. Dep't of Emp. Servs.*, 123 A.3d 947, 950-51 (D.C. 2015). The award of interest is not a sanction; rather, "its purpose is to preserve the value of the damages awarded." *D.C. Pub. Schs.*, 123 A.3d at 951 (internal quotation marks omitted).

[6] In *Yanni*, the Court of Appeals reversed an assessment of late-payment penalties against the PCIGC by the Maryland Workers' Compensation Commission, on the grounds, *inter alia*, that the penalties were not part of a "covered claim" for which the PCIGC is statutorily liable (a holding we discuss further below), and that (alternatively) the PCIGC is statutorily immune for other reasons from the imposition of penalties. 919 A.2d at 9-16.

benefits he was owed, and Mr. Hensley agreed to accept $110,000 from the PCIGC in a lump sum to resolve his underpayment claim. This settlement reserved Mr. Hensley's right to pursue his claim for late-payment penalties and interest. The settlement was approved by the Office of Workers' Compensation on February 12, 2019.

Mr. Hensley continued to seek an assessment of statutory penalties and interest against the PCIGC or, derivatively, the Association. On March 13, 2019, an Administrative Law Judge (ALJ) denied this relief, holding that both the PCIGC and the Association were immune from liability for the penalties and interest, and also that the Association was not a proper party to Mr. Hensley's claim for that relief since it was not the entity that had controlled and underpaid his supplemental allowances. On May 17, 2019, the CRB affirmed the ALJ's ruling that the PCIGC was immune on the ground that it was not subject to the requested relief under Maryland law. The CRB also upheld the dismissal of the Association, though on a different ground, namely the supposed untimeliness of Mr. Hensley's appeal of its dismissal. In so doing, the CRB left open the question whether the Association had an obligation to pay penalties or interest.

Mr. Hensley timely appealed to this court. On July 16, 2020, this court issued a Memorandum Opinion and Judgment upholding the conclusion that the PCIGC was immune from the assessment of penalties and interest based on the decision of the Maryland Court of Appeals in *Yanni*.[7] We held, however, that the CRB had erred in rejecting as untimely Mr. Hensley's appeal of the dismissal of the Association.[8] Accordingly, we remanded the case back to the CRB to decide whether Mr. Hensley can recover penalties and interest from the Association.

In its August 31, 2020, decision on remand, the CRB held, in agreement with the ALJ and "[i]n keeping with . . . *Yanni*," that the Association is immune from

_____

[7] The court stated that Mr. Hensley:

> has not provided persuasive arguments as to why this immunity [recognized in *Yanni*] should not apply in this dispute between [PCIGC], a Maryland entity, and petitioner [Mr. Hensley], a Maryland resident. . . . The state of Maryland has a strong interest in the consistent application of the law governing its residents' receipt of benefits from a state-created corporation that exists for the exact purpose of compensating people in petitioner's shoes; we agree with the CRB and apply *Yanni* because petitioner has pointed to no statutory reason for doing otherwise.

*Hensley v. D.C. Dep't of Emp. Servs.*, No. 19-AA-475, Mem. Op. & J. at 3 (D.C. July 16, 2020) (footnote omitted).

[8] *Id.* at 4-6.

liability for the late-payment penalties, and that it "would not be liable for penalties due because of circumstances which were beyond [its] control."[9] Mr. Hensley filed a timely petition for review by this court.

## II.

The CRB's decision that the Association is not subject to the late-payment penalties (or interest) in this case turns primarily on the proper interpretation of the Association's responsibilities and immunities set forth in the IGA Act. Our review of that question of statutory construction is de novo.[10] In construing the IGA Act, we must "give[] effect to the plain meaning of the words and [a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as exclusive."[11] Where the Act defines a term, "its definition is binding upon the court even though [or if] the definition does not coincide with the ordinary

---

[9] The CRB did not distinguish the request for an award of interest from the request for penalties, essentially equating the two requests.

[10] *Young v. D.C. Dep't of Emp. Servs.*, 241 A.3d 826, 829 & n.5 (D.C. 2020).

[11] *Zhou*, 699 A.2d at 351 (second alteration in original) (internal quotation marks omitted).

meaning of the words."[12] As the Act is based on a model act that "[a]ll fifty states have adopted [in] some form,"[13] we may look for guidance to decisions of other courts construing the same or similar language.

The IGA Act created the Association, "a nonprofit unincorporated legal entity," to pay "covered claims" against insurers that become insolvent, up to statutorily specified limits.[14] For that purpose, although the Association is not an insurance carrier itself, it is "deemed the insurer to the extent of its obligation on the covered claims and *to such extent* shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."[15] The Association's "obligation as to covered claims shall be satisfied by paying to the claimant . . . [t]he

---

[12] *Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011) (internal quotation marks omitted).

[13] *Zhou*, 699 A.2d at 351 (explaining that the IGA Act "is based on the Post-Assessment Property and Liability Insurance Guaranty Association Model Act which was prepared by the National Association of Insurance Commissioners in 1969").

[14] D.C. Code §§ 31-5503, 31-5505(a)(1).

[15] *Id*. § 31-5505(a)(2) (emphasis added).

full amount of a covered claim for benefits under a workers' compensation insurance coverage."[16]

"Covered claim" is a statutorily defined term. For a claim to be a "covered claim," it must be one that "arises out of and is within the coverage and is subject to the applicable limits of an insurance policy . . . issued by an insurer" that has become insolvent.[17] The definition of "covered claim" is critically important, because the Association is enjoined to "pay covered claims to the extent of the Association's obligation and *deny all other claims*."[18] "In no event shall the Association be obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises."[19]

There is no evidence in the record before us that Atlantic Mutual's insurance policy provided for late-payment penalties or interest. Mr. Hensley has not cited anything in the policy supporting such relief. The threshold question, therefore, is whether a claim for late-payment penalties and interest authorized by the Workers'

---

[16] *Id.* § 31-5505(a)(1)(A).

[17] *Id.* § 31-5501(6).

[18] *Id.* § 31-5505(a)(4) (emphasis added).

[19] *Id*. § 31-5505(a)(1).

Compensation Act is a "covered claim" within the meaning of the IGA Act. This court has not had occasion before now to answer that question, but other courts construing nearly identical statutory provisions have done so. The Maryland Court of Appeals did so with respect to late-payment penalties in *Yanni*, where a disabled employee (Mr. Yanni) made a claim against the PCIGC for such penalties under that state's Workers' Compensation Act. Like the Association in the present case, the PCIGC was statutorily obligated to pay the "covered claims" of insolvent insurers, defined (in pertinent part) in the Maryland Code as claims "aris[ing] out of" policies issued by insolvent insurers.[20] The Court of Appeals held that Mr. Yanni's claim for the late-payment penalties that were authorized by the Workers' Compensation Act was not a "covered claim" because the penalties "did not 'arise out of' [the insolvent insurer's] original workers' compensation insurance policy, but rather arose out of statutory obligations."[21] Accordingly, the court ruled, the PCIGC was not obligated to pay the statutory penalties.

---

[20] *See Yanni*, 919 A.2d at 9 (quoting Md. Code Ann., Ins. § 9-301(d) (West 1995)).

[21] *Id.* at 10. "Although the penalties were to be paid directly to Yanni," the court explained, "they [were] not part of the original claim amount, but, rather, constitute an additional payment, above and beyond the original claim award" and therefore did not constitute part of Yanni's "covered claim." *Id.*

The Connecticut Supreme Court reached the same conclusion in *Potvin v. Lincoln Service & Equipment Co.*[22]  In that case the state workers' compensation review board had upheld the imposition of late-payment sanctions against the Connecticut Insurance Guaranty Association.  The court reversed that decision.  Under the relevant statutory provisions, the association was obligated to pay only a "covered claim," defined as one that "arises out of and is within the coverage . . . of an insurance policy" issued by the insolvent insurer.[23]  Absent any evidence in the record that the insolvent insurer's policy "included an obligation on the part of the insurer to pay statutory penalties . . . in the event that it caused undue delay in the processing or payment of a claim," the court concluded that the sanctions did not fall within the definition of a covered claim and therefore could not be imposed on the association.[24]

Courts in other jurisdictions have reached the conclusion that insurance guaranty associations are not liable for statutory penalties by virtue of express

---

[22]  6 A.3d 60 (Conn. 2010).

[23]  *Id.* at 74 (quoting Conn. Gen. Stat. § 38a-838(5)).

[24]  *Id.*

statutory immunity provisions.[25] We are aware of only one court that has held otherwise. In *Callaghan v. Rhode Island Occupational Information Coordinating Committee/Industry Educational Council of Labor*,[26] the Rhode Island Supreme Court upheld the imposition of a late-payment penalty against the Rhode Island Insurers Insolvency Fund in an action for workers' compensation benefits. The court rejected the Fund's argument that the penalty did not fall within the definition of a "covered claim" because it did not arise out of the insolvent carrier's insurance policy. The court dismissed this argument summarily, citing a prior case that had rejected the contention that pre- and postjudgment interest obligations arise from statute rather than the insurance policy and therefore are not within the definition of a covered claim.[27] We do not find *Callaghan* persuasive on the issue before us. Neither that case nor *Jerry's Supermarkets* grappled with the distinction at the heart of the definition of "covered claim" between claims arising from insurance policies and claims arising from statutory obligations. Rather, the court simply held that "the

---

[25] *See, e.g.*, *Mosley v. Indus. Claim Appeals Off.*, 119 P.3d 576 (Colo. App. 2005); *Caulfield v. Leonard*, 676 So.2d 1117 (La. Ct. App. 1996); *see also Neb. Life & Health Ins. Guar. Ass'n v. Dobias*, 531 N.W.2d 217 (Neb. 1995).

[26] 704 A.2d 740 (R.I. 1997).

[27] *Id.* at 745 (citing *Jerry's Supermarkets, Inc. v. R. I. Insurers' Insolvency Fund*, 692 A.2d 697, 698 (R.I. 1997)).

purposes of the [insolvency fund] act will best be effectuated by ensuring that the insolvency fund discharges its obligations in a timely fashion."[28]

We agree with the reasoning of *Yanni* and *Potvin* that a claim for statutory late-payment penalties does not constitute a "covered claim" under the IGA Act. As in those cases, a claim for the "statutorily mandated twenty-percent penalty"[29] provided by D.C. Code § 32-1515(f) is not a "covered claim" because it arises out of statutory obligations rather than out of the insolvent insurer's policy.

We also conclude that a non-contractual claim for accrued interest is not a "covered claim." Although we recognize that accrued interest is not awarded as a penalty, it nonetheless is relief that arises from the agency's interpretation of the Workers' Compensation Act rather than from the terms of the insolvent insurer's policy.

---

[28] *Jerry's Supermarkets*, 692 A.2d at 698. Moreover, and interestingly for present purposes, the court agreed that the insolvency fund would *not* be liable to pay statutory interest that accrued before the fund took over for the insolvent insurer, because at that time "the fund had no control over the insurer's actions prior to its insolvency and therefore should not be held accountable for delays attributable to the insurer." *Id.* By the same reasoning, the Association in the present case "should not be held accountable for delays attributable to" the PCIGC and hence not liable for the late-payment penalties or interest at issue here.

[29] *Daly*, 121 A.3d at 1261.

Accordingly, while Mr. Hensley's claim for cost of living adjustments to his supplemental allowances was a "covered claim" arising from his policy, his claims for the statutory late-payment penalties and for accrued interest were not. The Association therefore cannot be required to pay those penalties or interest; indeed, by the express words of the IGA Act, it is prohibited from doing so.[30]

**III.**

For the foregoing reasons, the decision of the CRB is affirmed.

---

[30] As we have mentioned, Mr. Hensley has claimed that the Association is liable for penalties and interest based solely on *the PCIGC's* violation of its statutory obligation to make timely payments of his COLA — a failure for which the Association bore no responsibility. He has not claimed that the Association is subject to sanction based on its own actions. We therefore find it unnecessary to address the scope of the immunity from liability granted the Association and its agents, employees, or directors by D.C. Code § 31-5514 "for any action taken or any failure to act by them in the performance of their powers and duties." As a rule, "[c]ourts should not decide more than the occasion demands." *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993) (internal quotation marks omitted). In the present case, we "see no reason to reach out to decide an issue not squarely presented to us in this appeal." *D.C. Metro. Police Dep't v. D.C. Pub. Emp. Rels. Bd.*, 144 A.3d 14, 20 (D.C. 2016).