984 P.2d 574

Marie BILLS, individually and as assignee of KTTL, Inc., dba Pacific Beach Club, Inc., an Arizona corporation, Plaintiff/Appellant,

v.

ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND, Defendant/Appellee.

No. 2 CA–CV 98–0130.

Court of Appeals of Arizona. Division 2, Department A.

Jan. 28, 1999.

Review Dismissed Nov. 22, 1999.

**490**

The Kimble Firm, by Stephen Kimble and David F. Toone, Tucson, for Plaintiff/Appellant.

Chandler, Tullar, Udall & Redhair, LLP, by D.B. Udall, Tucson, for Defendant/Appellee.

## OPINION

PELANDER, Presiding Judge.

¶ 1   Plaintiff/appellant Marie Bills appeals from the trial court's entry of partial summary judgment for defendant/appellee Arizona Property and Casualty Insurance Guaranty Fund pursuant to Rule 54(b), Ariz. R. Civ. P., 16 A.R.S. We affirm.

## BACKGROUND

¶ 2   The facts pertinent to this appeal are undisputed.   In an underlying wrongful death action arising from a 1993 motor vehicle accident in which her husband was killed, plaintiff alleged "dram shop" liability against KTTL, Inc., doing business as Pacific Beach Club, Inc. (PBC).   PBC was insured by Prestige Casualty Insurance Co., with a policy liability limit of $1,000,000.   During the course of that litigation, Prestige became insolvent and was placed into receivership. The Fund then assumed all outstanding covered claims against PBC, including its defense of plaintiff's wrongful death action. Contrary to the advice and recommendations of PBC's defense counsel, the Fund refused to pay any amount to settle plaintiff's claim.

¶ 3   After a jury trial resulted in a verdict for plaintiff in the wrongful death action, she obtained a judgment against PBC for $401,706.34, which PBC appealed.   Thereafter, the Fund unsuccessfully attempted to settle plaintiff's claim against PBC for $60,000. Plaintiff and PBC then entered into a "Damron"[1] agreement under which PBC dismissed its appeal and assigned to plaintiff any rights it had against the Fund.

¶ 4   Plaintiff, individually and as PBC's assignee, then brought this action against the Fund and others.   Claiming negligence, breach of contract, and bad faith, plaintiff alleged that the Fund had unreasonably refused to settle her claim before trial, had failed to post any supersedeas bond for PBC's appeal, and had offered only $60,000 post-trial to settle the claim and satisfy her judgment.   In response, the Fund alleged that it "enjoy[ed] immunity pursuant to A.R.S. § 20–675(A)" and moved for summary judgment on that basis.   This appeal followed the trial court's entry of partial summary judgment for the Fund as to plaintiff's "causes of action sounding in tort."

## DISCUSSION

¶ 5   Citing *Wells Fargo Credit Corp. v. Arizona Property and Casualty Insurance Guaranty Fund,* 165 Ariz. 567, 799 P.2d 908 (App.1990), the trial court ruled that plaintiff's tort claims against the Fund are barred by § 20–675.   The court further ruled that § 20–675 is "not unconstitutional."   Plaintiff contends the trial court erred in several respects, arguing that *Wells Fargo* was wrong-

---

1.   *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997   (1969).

ly decided by Division One of this court,[2] § 20–675 "does not purport to grant immunity to the Fund," and if so interpreted, would violate the following provisions in Arizona's Constitution: article 18, § 6 (anti-abrogation clause); article 2, § 31 (no damage limitation clause); and article 2, § 13 (equal protection).

¶ 6 "When reviewing a grant of summary judgment where the facts are undisputed, we determine whether the trial court correctly applied the substantive law to the undisputed facts." *Carden v. Golden Eagle Ins. Co.*, 190 Ariz. 295, 296, 947 P.2d 869, 870 (App.1997). We review de novo statutory interpretation issues and constitutional claims and, if possible, will decide the case on nonconstitutional grounds. *Little v. All Phoenix South Community Mental Health Ctr.*, 186 Ariz. 97, 919 P.2d 1368 (App.1995). In interpreting statutes, our primary mission is "to find and give effect to legislative intent." *Mail Boxes, Etc. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We focus first on the statutory wording and, if it is ambiguous or inconclusive, we consider the statute's "context, subject matter, historical background, effects, consequences, spirit, and purpose." *Id.* at 122, 888 P.2d at 780. Finally, we will affirm the trial court's ruling if it is correct on any ground. *Glaze v. Marcus*, 151 Ariz. 538, 729 P.2d 342 (App.1986).

I. Statutory Issues

¶ 7 In 1970, the Arizona Legislature enacted a series of statutes that, inter alia, established the Fund's predecessor ("the association"), designated the members of its board, and set forth the association's statutory powers and duties. 1970 Ariz. Sess. Laws, ch. 78, § 2 (enacting former A.R.S. §§ 20–662(A), 20–663, and 20–664). Those laws were repealed and replaced with a new set of statutes, A.R.S. §§ 20–661 through 20–680 ("the statutes"), in 1977. 1977 Ariz. Sess. Laws, ch. 130, §§ 1 and 2. The Fund was created "to assume the liability of insolvent insurers." *Betancourt v. Arizona Property & Cas. Ins. Fund*, 170 Ariz. 296, 298, 823

P.2d 1304, 1306 (App.1991). Its essential purpose is "to provide for the payment of claims under certain insurance policies to avoid excess delay in payment and financial loss to claimants or policyholders because of the insolvency of an insurer." *Wells Fargo*, 165 Ariz. at 568, 799 P.2d at 909.

¶ 8 "[T]he Fund is obligated, within limits, to pay all 'covered' claims of insolvent insurers." *A.H. v. Arizona Property & Cas. Ins. Guar. Fund*, 190 Ariz. 526, 527, 950 P.2d 1147, 1148 (1997), *quoting* A.R.S. §§ 20–667 and 20–661(3). "A 'covered claim' is an unpaid claim arising 'out of' and 'within the coverage' of a policy written by an insolvent insurer to which the statutes apply." *A.H.*, 190 Ariz. at 527, 950 P.2d at 1148, *quoting* § 20–661(3). The Fund's obligation on covered claims is further limited to a maximum amount of "less than" $100,000. § 20–667(B).

¶ 9 In describing the nature of the Fund and its relationship with the insured and the insolvent insurer, our supreme court recently stated:

Sections 20–661 to 20–680 obligate the Fund to step into the shoes of insolvent insurers and adjust, compromise, settle, and pay covered claims that arise under insurance contracts. It may also deny claims, and defend and indemnify as necessary. *See* § 20–667(C) ("The fund is deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all the rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."). As we recognized in [*Arizona Property & Casualty Insurance Guaranty Fund v.*] *Herder,* [156 Ariz. 203, 751 P.2d 519 (1988),] however, the rights and obligations of an insolvent insurer and the Fund are not absolutely coextensive but are limited by the statute. 156 Ariz. at 205 n. 3, 751 P.2d at 521 n. 3 ("[T]he Fund is deemed the insurer to the extent of the Fund's obligations on the covered claims, and not to the extent of the insolvent insurer's."). The Fund is therefore a creature of statute

---

**2.** Although the trial court was bound by the *Wells Fargo* decision, *see Francis v. Arizona Department of Transportation*, 192 Ariz. 269, 963 P.2d 1092 (App.1998), this court is not. *See State v. Ott*, 167 Ariz. 420, 808 P.2d 305 (App.1990).

that *assumes the contractual obligations and rights of insolvent insurers* within the limits of its legislated mandate—in essence, *it exists as the result of a limited, statutorily imposed novation*. Thus, its relationship with parties insured by insolvent carriers is governed by the insured's contract. Section 12–341.01(A) is clearly applicable to coverage disputes between the insured and the Fund because the Fund's obligation is determined under the underlying insurance contract.

*A.H.*, 190 Ariz. at 529–30, 950 P.2d at 1150–51 (holding that "a dispute concerning policy coverage resolved by interpretation of § 20–673(C) is one that arises from contract" for purposes of awarding attorneys' fees under A.R.S. § 12–341.01). *See also Clark Equip. Co. v. Arizona Property & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 445, 943 P.2d 793, 805 (App.1997) ("Even though the Fund was created by statute and has assumed [the insolvent insurer's] obligations because of its statutory duty, the essential nature of this action remains one sounding in contract.").

■ ¶ 10 In light of the language in *A.H.*, the Fund's argument that it "cannot be held liable for breach of contract or bad faith" solely because "there is no contract" between it and PBC is misplaced.[3] Rather, the Fund has both a statutory and contractual relationship with the insured, obligating both parties to comply with the terms and conditions of the policy that the insolvent insurer had issued, to the extent those terms are not inconsistent with or superseded by the statutes. In Arizona, insurance contracts give rise to an implied covenant of good faith and fair dealing, which obligates the insurer "to give equal consideration to both the interests of itself and of its insured" in matters relating to settlement. *City of Glendale v. Farmers Ins. Exch.*, 126 Ariz. 118, 120, 613 P.2d 278, 280 (1980).[4] The statutes do not eliminate or modify that obligation. Therefore, the Fund essentially inherited the duty of good faith and fair dealing when it "step[ped] into the shoes" of the insolvent insurer,[5] *A.H.*, 190 Ariz. at 529, 950 P.2d at 1150, at least "to the extent of its obligation on the covered claims."[6] § 20–667(C). *See Arizona Property & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 138, 735 P.2d 451, 460 (1987) (suggesting that the Fund has both a "duty to indemnify and to fairly consider settlement proposals").

■ ¶ 11 As it did in the trial court, however, the Fund claims immunity from plaintiff's tort claims under § 20–675(A), which provides:

There shall be no liability on the part of, and no cause of action shall rise against, any member insurer, the board or its agents or employees, the director or representatives of the director for any action taken in the performance of their powers and duties pursuant to this article.

In *Wells Fargo*, the court concluded that "the legislative intent and the relevant statutory

---

3. The Fund relies on *Nevada Insurance Guaranty Association v. Sierra Auto Center*, 108 Nev. 1123, 844 P.2d 126, 128 (1992), which held that the Nevada guaranty association did not owe a duty of good faith and fair dealing to the insured because their relationship was "purely statutory." That rationale, however, is inconsistent with *A.H.* In addition, the Fund's "no contract" argument is inconsistent with its position in other cases, that the insured's breach of the policy's cooperation clause "freed [the Fund] from liability." *Clark Equip. Co. v. Arizona Property & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 441, 943 P.2d 793, 801 (App.1997). *See also Arizona Property & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 137, 735 P.2d 451, 459 (1987) (concluding that the Fund "anticipatorily breached its contractual and statutory obligations as a matter of law").

4. *See also Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986); *Noble v. Nat'l Am. Life Ins.*

Co., 128 Ariz. 188, 624 P.2d 866 (1981); *Farmers Ins. Exch. v. Henderson*, 82 Ariz. 335, 313 P.2d 404 (1957); *Betancourt v. Arizona Property & Cas. Ins. Fund*, 170 Ariz. 296, 823 P.2d 1304 (App.1991).

5. In her deposition, an insurance company claims manager who was also a member of the Fund's board expressed her belief that the Fund had an obligation of good faith and fair dealing toward the insured.

6. It is undisputed that plaintiff's underlying "dram shop" claim against PBC is a "covered claim" for purposes of A.R.S. §§ 20–661(3), 20–664(A)(1), and 20–667. Although the statutes do not define "claim" in this context, it is commonly understood to refer to "a third party's assertion of a legal right against an insured." *Arizona Property & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 133, 735 P.2d 451, 455 (1987).

provisions indicate that the Fund itself is immune from tort liability pursuant to § 20–675, notwithstanding the lack of a specific reference to the Fund in that provision." [7] 165 Ariz. at 573, 799 P.2d at 914. *See also Clark Equip.*, 189 Ariz. at 445, 943 P.2d at 805 ("[T]he Fund is not liable for the bad faith denial of a claim.").

¶ 12 Plaintiff challenges that conclusion, noting that, unlike the Model Act upon which Arizona's statutes were based,[8] § 20–675(A) "does not purport to grant immunity to the Fund." The Model Act's immunity provision (§ 17) expressly includes "the association." Although the parties do not mention it, Arizona's original immunity statute, which the legislature enacted in 1970 and repealed in 1977, also expressly included "the association." 1970 Ariz. Sess. Laws, ch. 78, § 2 (enacting former A.R.S. § 20–673).

¶ 13 The court in *Wells Fargo* did not address either the Model Act or Arizona's predecessor immunity statute. Considering the Model Act and the 1970 version of the immunity statute, it could be argued that the legislature's omission of "the fund" from § 20–675(A) in 1977 resulted either from an inadvertent oversight or a deliberate deletion. We have neither found nor been furnished with any helpful legislative history, however, to indicate why the legislature would have deliberately omitted "the fund" from the immunity provision when reenacting it in 1977. In the absence of any such history, we agree with the analysis and conclusion in *Wells Fargo* that § 20–675(A) was

intended to include the Fund, particularly when the 1970 predecessor statute expressly included "the association." In addition, like Wells Fargo in that case, plaintiff here offers no explanation as to why the legislature might have intentionally omitted the words "the fund" from § 20–675(A) while, in the same legislative session, including those words in A.R .S. § 20–693, which provides immunity for the life and disability insurance guaranty fund.[9]

¶ 14 Plaintiff also argues that any immunity for the Fund and its agents only applies to "action[s] taken in the performance of their powers and duties pursuant to [the statutes]." § 20–675(A). According to her, bad faith conduct is outside the scope of that language and is, therefore, not immunized. Although that contention was not addressed and apparently was not raised in *Wells Fargo*, we rejected a similar argument in *Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, 972 P.2d 658 (Ct.App. 1998). Analogizing to that case, "[t]o accept plaintiff's contention that statutory immunity is automatically unavailable [when bad faith is alleged] would completely dilute, if not altogether eliminate," the immunity provision. *Id.* at ¶ 13. The Fund's activities to which plaintiff's allegations of bad faith relate "are undeniably part of [the Fund's] statutory powers and duties to adjust, handle, and pay covered claims while denying all others." *T & N PLC v. Pennsylvania Ins. Guar. Ass'n*, 800 F.Supp. 1259, 1265 (E.D.Pa.1992).

7. In 1998, the Arizona Legislature amended A.R.S. § 20–675(A) by specifically adding "the fund." 1998 Ariz. Sess. Laws, ch. 94, § 6. Although a statutory amendment made shortly after the original enactment sometimes may clarify ambiguities in the earlier version, *State v. Sweet*, 143 Ariz. 266, 693 P.2d 921 (1985); *City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964), we do not believe that canon of statutory construction realistically applies here, when a new generation of legislators amended the statute twenty-one years after its original passage. *Cf. Ormsbee v.. Allstate Ins. Co.*, 177 Ariz. 146, 865 P.2d 807 (1993). The Fund does not contend otherwise.

8. The Post–Assessment Property and Liability Insurance Guaranty Association Model Act, drafted by the National Association of Insurance Commissioners and adopted by it in 1970, has been

adopted in some form by most states and apparently was used as a basis for the Arizona statutes.

9. Although not determinative, that the legislature did not change A.R.S. § 20–675(A) from 1990 to 1998, when it expressly added "the fund," supports our agreement with the *Wells Fargo* court's construction of the statute. *See Neal v. United States*, 516 U.S. 284, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996) (once court has determined a statute's meaning, court should adhere to that ruling under the doctrine of stare decisis, absent intervening change in the law or compelling evidence bearing on original legislative intent that undermines court's prior conclusion); *Zimmerman v. Wisconsin Elec. Power Co.*, 38 Wis.2d 626, 157 N.W.2d 648, 651 (Wis.1968) ("[W]hen the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct.").

See also *Fernandez v. Florida Ins. Guar. Ass'n*, 383 So.2d 974, 975 (Fla.Dist.Ct.App. 1980), *quoting* Fla. Stat. Ann. § 631.66 (1979) (no bad faith action against fund because its refusal to accept settlement offer "was an 'action' it took 'in the performance of (its) powers and duties' under the statute to dispose of the covered claim in question"); *cf. Valencia Energy Co. v. Arizona Dep't of Revenue*, 191 Ariz. 565, 575, 959 P.2d 1256, 1266 (1998) (act authorized by statute or undertaken within general parameters of statutory authority does "not become unauthorized simply because the act was performed erroneously").

¶ 15   Aside from its immunity argument, the Fund maintains that it should not be exposed to bad faith claims because it lacks statutory authority to assess or collect from its member insurers amounts needed to defend, settle, or satisfy such claims. In contrast, plaintiff contends the statutes permit, rather than prohibit, the Fund to collect and pay funds for tort damages. *Wells Fargo* supports the Fund's position. The court there noted that "the legislature limited the Fund's obligation to the extent of the 'covered claims' ... [and its] authority to collect funds to pay covered claims" and then stated:

> The Fund is thus statutorily limited to the payment of "covered claims," the definition of which does not include tort claims made against the Fund. Moreover, the Fund (through its board) is also statutorily unable to collect funds from member insurers beyond that necessary to pay "covered claims." In sum, the legislature neither provided for the Fund to obtain money to discharge an adverse tort judgment nor authorized the Fund to actually pay such a judgment against it were one to be rendered.

165 Ariz. at 572, 799 P.2d at 913.

¶ 16   We find the *Wells Fargo* court's reasoning on this point sound. The definition of "covered claim" in § 20–661(3) does not include tort damages, because they do not "arise[ ] out of" and are not "within the coverage of an insurance policy to which [the statutes] appl[y]." § 20–661(3). *See T & N PLC; Veillon v. Louisiana Ins. Guar. Ass'n*, 608 So.2d 670 (La.Ct.App.1992);

*Vaughn v. Vaughn*, 23 Wash.App. 527, 597 P.2d 932 (1979).

¶ 17   Nor do §§ 20–666(A) and 20–667(C), upon which plaintiff relies, support her position or override § 20–675(A). Section 20–666(A) requires the Fund's board to "assess each member insurer, ... in such amounts as are necessary to pay the obligations of the fund pursuant to § 20–667 subsequent to an insolvency, the expenses of handling covered claims subsequent to an insolvency ... and other expenses authorized pursuant to [the statutes]." Under § 20–667, the Fund "is obligated to the extent of the covered claims," § 20–667(A), and "is deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." § 20–667(C).

¶ 18   We must construe these provisions together, in the context of the overall statutory scheme, and aim to achieve consistency among them. *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 909 P.2d 486 (App.1995). So read, they limit the Fund's collection and payment obligations and its authority to "covered claims." *See T & N PLC; Isaacson v. California Ins. Guar. Ass'n*, 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297 (1988). The Fund's authority to assess member insurers for expenses pursuant to § 20–666(A) is limited to "expenses of handling covered claims" and "other expenses authorized" by the statutes. Tort damages do not qualify under either § 20–666(A) or § 20–667(C). *See Clark Equip.*, 189 Ariz. at 446, 943 P.2d at 806 ("[U]nlike tort claims, the Fund is empowered to collect assessments from member insurers to pay the costs associated with 'handling covered claims,' A.R.S. § 20–666(A), which include payments for attorneys' fees pursuant to A.R.S. section [sic] 12–341.01(A)."). Finally, contrary to plaintiff's contention, the Fund's general, permissive authority to "[b]orrow funds necessary to carry out the intent of [the statutes]," "[s]ue and be sued," and "[p]erform such other acts as are necessary or proper to carry out the intent of [the statutes]," § 20–664(B)(3), (4), (6), does not "serve to create a cause of

action where none exists" or "vitiate the effect of the immunity section." *Schreffler v. Pennsylvania Ins. Guar. Ass'n,* 402 Pa.Super. 309, 586 A.2d 983, 986 (1991).

¶ 19 Although plaintiff contends *Wells Fargo* was wrongly decided, we agree with its reasoning and conclusion. Moreover, *Wells Fargo*'s rejection of bad faith claims against the Fund is consistent with the majority view of other courts that have analyzed similar statutory schemes and addressed the issue. *See, e.g., T & N PLC; Fernandez; Veillon; Williams v. Champion Ins. Co.,* 590 So.2d 736 (La.Ct.App.1991); *Schreffler, Vaughn; cf. Isaacson.* The facts and procedural history in *Schreffler* were almost identical to those in this case. Interpreting an immunity provision essentially the same as Arizona's, the Pennsylvania court concluded that "[a]pplying the clear language of the statute requires the conclusion that there is no cause of action for bad faith failure to settle since settlement is a power conferred upon [the guaranty fund] under the terms of the Act." 586 A.2d at 985. We reach the same conclusion here.

¶ 20 *Washington Insurance Guaranty Association v. Ramsey,* 922 P.2d 237 (Alaska 1996), cited by plaintiff, is inapposite. In that case, Ramsey (the insured's assignee) only sought payment, as a "covered claim," of a consent judgment totaling $300,000, the maximum amount recoverable under Washington's guaranty fund act. *Id.* at 239. Unlike plaintiff here, Ramsey sued merely to enforce the guaranty fund's statutory obligations. Interpreting Washington law, the Alaska court held that the Washington guaranty fund "had no immunity for a claim to enforce its statutory duties." *Id.* at 246. At bottom, that holding was premised on the court's recognition of a statutory duty to reasonably settle claims and its conclusion that the fund's refusal to do so "is not an action taken pursuant to statutory authority, and therefore does not warrant immunity" under Washington's immunity statute. *Id.* at 244.

¶ 21 Even were we to agree with that conclusion, it is inapplicable here. Plaintiff does not merely seek to hold the Fund liable for breach of its statutory duties, but rather, seeks noncontractual and nonstatutory damages under a common law bad faith theory. The Alaska court's statement that "we see no obstacle that would prohibit an insured from suing [the Washington guaranty fund] in contract for bad faith handling of a claim" is dictum that we find unpersuasive. *Id.* at 245 n. 25. Moreover, the Washington Court of Appeals has rejected a bad faith claim against that state's guaranty fund because such a claim "is not a 'covered claim' within the meaning of [the Washington statute]," which is identical to § 20–661(3). *Vaughn,* 597 P.2d at 934.

¶ 22 Plaintiff also points to subsection (B) of § 20–675, first enacted by the legislature in 1977, which provides:

The board and its agents or employees shall be indemnified by the fund against all expenses incurred in the defense of any action, suit or proceeding brought against such person on account of any action taken in the performance of the powers and duties of such person pursuant to this article, unless such person is finally adjudged to have committed a breach of duty involving gross negligence, bad faith, dishonesty, wilful malfeasance or reckless disregard of the responsibilities of his or her office. In the event of settlement before the final adjudication, such indemnity shall be provided only if the board is advised by independent counsel selected by the board that such person did not, in counsel's opinion, commit such a breach of duty.

As plaintiff correctly notes, the court in *Wells Fargo* did not address subsection (B), nor is that provision contained in the Model Act. According to plaintiff, subsection (B) "completely contradicts the immunity" in subsection (A) and renders the statute ambiguous, because "[a] person cannot be finally adjudged to have committed bad faith if such person is entitled to immunity from suit." Plaintiff further argues that § 20–675(A), properly interpreted in conjunction with subsection (B), does not immunize the Fund from bad faith acts or omissions, even if they occur "in the performance of the powers and duties of [the Fund's board or its agents or employees] pursuant to [the statutes]." § 20–675(B).

¶ 23  If possible, "[w]e must harmonize apparently conflicting language of different parts of the statute so as to give effect to both." *Chaparral Dev. v. RMED Int'l*, 170 Ariz. 309, 313, 823 P.2d 1317, 1321 (App. 1991).  The Fund did not address plaintiff's argument in its brief, but conceded at oral argument that subsection (B)'s indemnification provisions are superfluous in view of subsection (A)'s grant of immunity.  Despite that concession, we do not find the two subsections logically irreconcilable.

¶ 24  Subsection (B) is not unlike other Arizona statutes that authorize or require indemnity for those who act in good faith on behalf of a corporation or other organization. *See, e.g.,* A.R.S. §§ 3–416, 10–851, 10–3851, 10–3852, 38–847(P), and 38–893(P).  That any right to indemnification under (B) is limited to "expenses incurred in the defense of any action" renders that subsection compatible with subsection (A).  Contrary to plaintiff's contention, a person who seeks indemnity for defense costs pursuant to subsection (B), through a separate indemnity action, cross-claim or third-party claim against the Fund, could be "finally adjudged to have committed a breach of duty involving ... bad faith." § 20–675(B).  If so, that person would not be entitled to indemnity, regardless of whether he or she is immune in the underlying action pursuant to subsection (A).

¶ 25  Thus, subsection (B) has some limited purpose and utility.  As this case illustrates, someone may sue the Fund's board, its agents, or employees even though they are immune from liability pursuant to subsection (A).  In that event, the Fund is obligated to indemnify the board, its agents, or employees for any expenses they incur in defending the action, for example, in preparing and litigating a motion to dismiss under Rule 12(b)(6), Ariz. R. Civ. P., 16 A.R.S., unless they engaged in the type of conduct set forth in subsection (B), including bad faith.  Immunity under subsection (A) does not guarantee indemnification under subsection (B).  In addition, there may be circumstances in which indemnity under subsection

(B) clearly is precluded but immunity under subsection (A) is far from clear, for example, if an agent of the Fund's board embezzles or intentionally converts Fund monies for an improper purpose.  Such conduct hardly could be viewed as "action taken in the performance of [the agent's] powers and duties" pursuant to the statutes.  § 20–675(A).

¶ 26  Even if subsections (A) and (B) were irreconcilable, that would not undermine the principle that the legislatively created Fund is "statutorily limited to the payment of 'covered claims,' the definition of which does not include tort claims made against the Fund." *Wells Fargo*, 165 Ariz. at 572, 799 P.2d at 913.  *See also T & N PLC* (damages allegedly caused by state guaranty fund's bad faith handling of claim not recoverable because they do not constitute "covered claim" within meaning of statute virtually identical to § 20–661(3)); *Vaughn* (same).  Because "the rights and obligations of an insolvent insurer and the Fund are not absolutely coextensive but are limited by the statute," *A.H.*, 190 Ariz. at 530, 950 P.2d at 1151, the Fund is not subject to liability on plaintiff's tort claims, notwithstanding the alleged invalidity or incongruity of § 20–675.

¶ 27  Plaintiff presents some public policy reasons, however, that arguably support recognizing and permitting bad faith claims against the Fund in some circumstances.  If the Fund's claim handling and settlement activities are "unchecked by any real consequence for failure to be fair and reasonable," she asserts, the Fund's agents "are not going to be reliably fair and reasonable." [10]  According to her, "immunity renders the obligation to act in good faith an illusion," and the Fund "can treat the insured with indifference or even contempt" without ever "hav[ing] to answer for its conduct."  The Fund openly acknowledged at oral argument that permitting it to act in utter bad faith with impunity and immunity is "bothersome."  We agree.

¶ 28  On the other hand, the record does not indicate, nor does plaintiff argue, that the Fund or its agents routinely or cavalierly

---

**10.** The outside adjuster whom the Fund had hired in the underlying case testified in his deposition that he understood at the time he had

handled plaintiff's claim that he, his agency, and the Fund all were immune from bad faith claims.

engage in bad faith practices in handling covered claims. There is no evidence of a pattern of misbehavior.[11] In addition, we note that plaintiff is not without a remedy. Her claim that the Fund is contractually and statutorily obligated to pay the "statutory limits" is still pending in the trial court. If she prevails on that claim, she not only will be entitled to recover up to $100,000 under § 20–667(B), but also could potentially recover prejudgment interest and attorneys' fees. *See A.H.; Clark Equip.; Alta Vista Plaza, Ltd. v. Insulation Specialists Co.,* 186 Ariz. 81, 919 P.2d 176 (App.1995). The Fund's exposure to such awards should help to deter any tendency to engage in unreasonable negotiation and settlement tactics.

¶ 29 Although plaintiff's policy arguments are somewhat compelling, they are better addressed to the legislature or the state department of insurance. Pursuant to the statutory scheme, and in accordance with the weight of authority on this topic, we conclude the Fund is not subject to common law tort claims in connection with its handling of covered claims. Accordingly, the trial court properly rejected plaintiff's statutory arguments. We therefore turn to her constitutional claims.

## II. Constitutional Issues

¶ 30 *Wells Fargo* did not address any constitutional issues or, as plaintiff states, determine whether the immunity in § 20–675(A) "is valid and enforceable." Plaintiff has the burden of clearly demonstrating that the statutes are unconstitutional. *Ramirez.* We presume statutes are constitutional and, if possible, construe them so as to avoid rendering them unconstitutional,

resolving any doubts in favor of their constitutionality. *Id.*

¶ 31 Relying on article 18, § 6, and article 2, § 31, of the Arizona Constitution,[12] plaintiff contends "the legislature has [unconstitutionally] abrogated the recognized cause of action for breach of the duty of good faith." As she points out, Division One of this court has concluded that a common law cause of action for bad faith against a private insurance company, including a workers' compensation carrier, is constitutionally protected from legislative abrogation. *See Franks v. United States Fidelity & Guar. Co.,* 149 Ariz. 291, 718 P.2d 193 (App.1985); *cf. Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 872 P.2d 668 (1994) (holding that Arizona courts have jurisdiction over bad faith actions against workers' compensation carriers without reaching question of whether such actions are constitutionally protected). Assuming the proposition in *Franks* is correct, we disagree with plaintiff's contention that such an action against the statutorily created Fund is constitutionally protected.[13]

¶ 32 The court in *Franks* noted that there is "a history in the common law for the tort of bad faith," which is an intentional tort that "arises from a well-recognized principle of the common law that an insurance contract has an implied obligation of good faith and fair dealing." 149 Ariz. at 299, 718 P.2d at 201. In contrast, no Arizona court has recognized a common law bad faith action against the Fund, and neither "a history in the common law" nor the statutory framework supports recognition of such a claim. *Id.* In *Fernandez,* the court concluded that the guaranty fund's immunity from bad faith claims did not violate the "access to courts"

---

11. The member of the Fund's board testified in her deposition that she was not aware of any other cases in which the Fund had refused to pay a settlement amount that the insured and the insured's counsel had recommended.

12. Article 18, § 6, of the Arizona Constitution provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Article 2, § 31, provides: "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person." Those

provisions "are interrelated as they guarantee the same basic right." *Franks v. United States Fidelity & Guar. Co.,* 149 Ariz. 291, 298, 718 P.2d 193, 200 (App.1985). *See also Larsen v. Nissan Motor Corp.,* 281 Ariz. Adv. Rep. 24, 194 Ariz. 142, 978 P.2d 119 (Ct.App.1998).

13. The Fund's "election of remedies" argument in response to plaintiff's constitutional claims misses the point, because this case does not involve whatever rights plaintiff personally might have had, but rather, the Fund's duties to the insured, PBC, and plaintiff's rights as PBC's assignee in that regard.

clause of Florida's constitution. 383 So.2d at 976. As that court stated:

> This ["access to courts"] provision applies only to forbid the abolition of *pre-existing* common law or statutory rights. Since, absent [the statutes, the guaranty fund] would not exist and there would be no effective remedy to recover on any claims whatever against insolvent insurers, there can be no constitutional infirmity in the legislature's decision to limit those newly-created rights and, in effect, not to establish an additional one.

*Id.* (citation omitted).

¶ 33 Similarly, "[s]ince no cause of action has ever been recognized for [bad faith against the Fund] in a case like this one, the [trial] court's ruling did not violate the constitution." *Miel v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 104, 111, 912 P.2d 1333, 1340 (App.1995). *See also Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 17, 730 P.2d 186, 194 (1986) (article 18, § 6, was intended to "preserv[e] the ability to invoke judicial remedies for those wrongs traditionally recognized at common law"); *Ramirez,* 193 Ariz. 325, ¶ 32, 972 P.2d 658, ¶ 32 (when statute "does not abrogate any viable 'right of action to recover damages,' it does not violate article 18, § 6"); *cf. Clouse v. State of Arizona,* 284 Ariz. Adv. Rep. 16, ¶¶ 18, 22, 194 Ariz. 473, ¶¶ 18, 22, 984 P.2d 559, ¶¶ 18, 22 (Ct.App. December 15, 1998) (holding that "the anti-abrogation clause does not apply to negligence actions against the government in Arizona" because the state was immune from negligence actions until 1963 and that A.R.S. § 12–820.02(A)(1) "is a constitutional grant of governmental immunity"); *Evenstad v. State of Arizona,* 178 Ariz. 578, 586, 875 P.2d 811, 819 (App.1993) (holding that, "because neither the Arizona courts nor the legislature has ever recognized a right of action against public entities for conduct shielded by A.R.S. section 12–820.01, the Arizona Constitution does not guarantee a cause of action for such conduct against those public entities").

¶ 34 But for the Fund, both tort victims and insureds of insolvent carriers would have no source of liability insurance proceeds to compensate the victim for damages caused by the insured tortfeasor's wrongdoing. Having created a statutory remedy to alleviate that situation and to help fill the gap, the legislature was constitutionally entitled to prescribe and limit the remedy. *Cf. Diaz v. Magma Copper Co.,* 190 Ariz. 544, 549, 950 P.2d 1165, 1170 (App.1997), *quoting Halenar v. Superior Court,* 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972) ("[T]he right to recover damages for wrongful death 'is not placed beyond the power of the legislature to abrogate by § 6 of Article 18 of the Arizona Constitution' and 'can be granted or withheld at the pleasure of the legislature.' "). As "a creature of statute" whose "rights and obligations ... are limited by the statute," *A.H.,* 190 Ariz. at 530, 950 P.2d at 1151, the Fund is not subject to bad faith liability, and that statutory limitation does not violate the anti-abrogation or no-damage limitation provisions of the Arizona Constitution.

¶ 35 Nor does the Fund's nonliability for alleged bad faith acts or omissions violate equal protection principles.[14] Plaintiff does not claim membership in any "suspect class," but correctly observes that "claimants have a fundamental right to bring and pursue an action for damages." *Lerma v. Keck,* 186 Ariz. 228, 232, 921 P.2d 28, 32 (App.1996). *See also Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984). Just as a claimant has no fundamental right to sue the state, its political subdivisions, or other public entities, however, *see Hendel v. Salt River Project Agricultural Improvement & Power District,* 274 Ariz. Adv. Rep. 26, 1998 WL 404489 (Ct.App. July 21, 1998); *Pike v. Arizona Department of Transportation,* 261 Ariz. Adv. Rep. 29, 1998 WL 30531 (Ct.App. January 29, 1998); *Evenstad,* we believe that plaintiff has no fundamental right to sue the Fund for bad faith.

¶ 36 In our view, that is so even though the Fund is not strictly a public enti-

---

**14.** Article 2, § 13, of the Arizona Constitution, on which plaintiff relies, provides: "No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

ty or financed by public monies, but rather, is a conglomeration of private insurers, albeit created and mandated by statute. *See* §§ 20–661(6), 20–662, 20–663, and 20–666; *Helme.* Accordingly, the rational basis test, rather than a strict scrutiny analysis, applies to plaintiff's equal protection challenge. *See Ramirez.* Under that test, legislation must serve a legitimate state interest, and the statutory scheme must rationally further that interest. *Id.* In applying the test, we presume that the legislation is rational, and the plaintiff must clearly show arbitrariness or irrationality in order to overcome that presumption. *Id.; Lerma.* Plaintiff has failed to overcome the presumption here.

¶ 37 *Kenyon*, on which plaintiff primarily relies, involved a statute that effectively precluded certain medical malpractice claimants from ever suing health care providers. In contrast, this case involves an entity created, mandated, and circumscribed by statute. All persons with claims against the Fund are governed by the same statutory set of rules. In the absence of the statutes, there would be no Fund and no cause of action against it. *See T & N PLC*, 800 F.Supp. at 1263 (guaranty fund "is a statutory entity that depends solely on the Insurance Guaranty Act for its existence and for a definition of the scope of its powers, duties and protections"); *Isaacson.*

¶ 38 Statutorily limiting the Fund's liability to the payment of "covered claims," as defined in the statutes, is neither arbitrary nor irrational. That limitation rationally furthers the state's legitimate interest in preserving the Fund's financial integrity. Attaining that goal, in turn, is important in view of the purpose behind the Fund's creation and continued existence: to provide some protection to an insured who, without fault, becomes uninsured because of his or her insurer's insolvency and to provide some source of compensation to persons who have been damaged by an insured. The statutes are designed to limit the Fund's financial liability while still affording some protection to an insured and some relief to injured victims in that situation.

¶ 39 Moreover, plaintiff postulates, without support in the record, that the Fund's member insurers structure their premiums so as to pass on their costs of contributing to the Fund to their policyholders. If that is true, the legislature might have intended to limit premium increases by prohibiting tort claims against the Fund. *See Lerma* (court may consider legislature's actual purpose or any hypothetical basis for enacting statute). The statutory mechanism for achieving these goals, although precluding the Fund's exposure to bad faith claims, has a rational basis and, therefore, does not infringe plaintiff's equal protection rights.

### DISPOSITION

¶ 40 The trial court's partial summary judgment is affirmed.

CONCURRING: WILLIAM E. DRUKE, Chief Judge and M. JAN FLOREZ, Judge.