Sherry L. MOSLEY, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE OF COLORADO, Asphalt Paving Company, and Great States Insurance Company, Respondents.

No. 03CA2485.

Colorado Court of Appeals, Div. I.

May 5, 2005.

Certiorari Denied Aug. 22, 2005.*

---

* Chief Justice MULLARKEY and Justice MARTINEZ would grant as to the following issue:

Whether C.R.S. section 10-4-517 gives the Colorado Insurance Guaranty Association immunity from penalties under the general penalty section of the Workers' Compensation Act of Colorado, found at C.R.S. section 8-43-304(1), in spite of this section's broad, all-inclusive language which authorizes the imposition of penalties against "any person" and "any insurer" who violates an ALJ's order, as the CIGA did here.

Larry D. Lee, Boulder, Colorado; Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado, for Petitioner.

John W. Suthers, Attorney General, Y.E. Scott, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Kennedy, Christopher, Childs & Fogg, P.C., John R. Mann, Denver, Colorado, for Respondents Asphalt Paving Company and Great States Insurance Company.

LOEB, J.

Sherry L. Mosley (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) denying her request for the assessment of penalties against the Colorado Insurance Guaranty Association (CIGA). CIGA assumed the liability of Great States Insurance Company, the insurer of the employer, Asphalt Paving Company, on May 8, 2001, when Great States became insolvent. We affirm.

This case has a lengthy history, and only the relevant facts will be discussed. Claimant was injured in a compensable work-related motor vehicle accident in 1998, and Asphalt Paving admitted liability for temporary disability benefits based on an average weekly wage (AWW) of $294.18. In November 2000, claimant was awarded permanent partial disability (PPD) benefits based on a thirty-one percent whole person impairment rating, which included twenty-five percent impairment for nonthoracic (cervical and mental impairment) injuries, and eight percent for impairment to the thoracic spine. On review, the PPD rating was ultimately upheld. *See Mosley v. Indus. Claim Appeals Office,* 78 P.3d 1150 (Colo.App.2003).

In the meantime, claimant sought the imposition of penalties under § 8–43–304(1), C.R.S.2004, of the Workers' Compensation Act, based upon the failure of Asphalt Paving, Great States, and CIGA to pay the uncontested twenty-five percent PPD benefits calculated using the admitted AWW. The administrative law judge (ALJ) initially denied the request because a final order on benefits had not yet been entered. On April 29, 2003, the ALJ determined that penalties should be imposed because Asphalt Paving, Great States, and CIGA had failed to pay PPD benefits based on the undisputed twenty-five percent PPD.

CIGA petitioned for review of the April 2003 order and filed a motion requesting that it be substituted as a party-respondent for Great States in the caption. CIGA also filed a separate motion for a corrected order determining that it was immune from liability for penalties because a penalty is not a "covered claim" under § 10–4–503(4), C.R.S.2004, of the CIGA Act. Claimant opposed these motions.

In an order dated July 16, 2003, the ALJ ultimately determined that there was no evidence that CIGA had committed any malfeasance. However, the ALJ determined that CIGA need not be substituted as a party because, regardless of its status, it was liable only to the extent of the insolvent insurance carrier's contractually covered benefit obligations, excluding penalties.

On review, the Panel concluded that claimant's construction of § 8–43–304(1) was inconsistent with § 10–4–517, C.R.S.2004, the more specific, and more recently enacted, statute governing immunity of CIGA from all liability. The Panel also relied upon authority from other states that had broadly interpreted similar statutes and precluded the

imposition of penalties against an insurance guaranty fund.

The Panel therefore determined that CIGA was liable for penalties only if they "ar[o]se out of" and were "within the coverage" of the insurance policy issued by Great States. The record did not contain a copy of Great State's policy, and no testimony was presented concerning the policy's coverage provisions. Accordingly, the Panel concluded that the ALJ correctly determined that CIGA was immune from penalties.

On appeal, claimant concedes that CIGA is not responsible for paying penalties assessed against Great States for its misconduct before the date of its insolvency. The only issue on appeal is whether CIGA is immune from penalties for its own alleged misconduct in delaying payment of benefits to claimant after the date of Great States' insolvency. This is an issue of first impression in Colorado. We conclude that CIGA is immune from assessment of such penalties.

### I.

■ Initially, we agree with the Panel that claimant preserved the issue whether CIGA committed any malfeasance by explicitly arguing that CIGA wrongly made all decisions for nonpayment of PPD benefits after May 8, 2001.

Even if we were to conclude, however, that the malfeasance issue was not preserved, we nevertheless would reject the employer's argument that the appeal is moot. *See People in Interest of Yeager,* 93 P.3d 589 (Colo.App. 2004)(a court may resolve an otherwise moot case if the matter is one that is capable of repetition yet evading review or involves issues of great public importance or a recurring constitutional violation); *People v. Boyd,* 23 P.3d 1242 (Colo.App.2001); *see also Colo. Comp. Ins. Auth. v. Jorgensen,* 992 P.2d 1156 (Colo.2000)(parties stipulated that controversy was a matter of public importance, was capable of repetition, and might otherwise evade review).

### II.

■ Claimant first contends that CIGA is both an "insurer" and "any other person"

under § 8–43–304(1) and, therefore, has the duty to act reasonably or be subject to penalties. Claimant argues that CIGA was responsible for its own decision not to pay benefits timely in accordance with the ALJ's order. We disagree.

Section 8–43–304(1) provides:

Any employer or *insurer,* or any officer or agent of either, or any employee, *or any other person* who violates any provision of articles 40 to 47 of this title, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, for which no penalty has been specifically provided, or fails, neglects, or refuses to obey any lawful order made by the director or panel or any judgment or decree made by any court as provided by said articles shall be subject to such order being reduced to judgment by a court of competent jurisdiction and shall also be punished by a fine of not more than five hundred dollars per day for each such offense, seventy-five percent payable to the aggrieved party and twenty-five percent to the subsequent injury fund created in section 8–46–101.

(Emphasis added.) This statutory language remains virtually unchanged since its initial enactment in 1919. *See Dworkin, Chambers & Williams, P.C. v. Provo,* 81 P.3d 1053 (Colo.2003).

However, § 10–4–517, which was enacted in 1971, *see* Colo. Sess. Laws 1971, ch. 205 at 756–63, and more specifically outlines the obligations of CIGA, provides:

There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this part 5.

■ The first goal of a court construing a statute is to ascertain and give effect to the intent of the General Assembly. *Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220, 223 (Colo.2005); *Showpiece Homes Corp. v. Assurance Co.,* 38 P.3d 47 (Colo.2001).

To discern the intent of the General Assembly, a court should look first to the language of the statute. *Holliday v. Bestop, Inc.,* 23 P.3d 700 (Colo.2001). If the language of a statute is clear and the legislative intent may be discerned with reasonable certainty, the statute must be applied as written. *Holliday v. Bestop, Inc., supra; Montes v. Hyland Hills Park & Recreation Dist.,* 849 P.2d 852 (Colo.App.1992). If the statute is reasonably susceptible of different interpretations, we determine the proper interpretation by examining the legislative goals underlying the provision, the circumstances under which it was adopted, and the consequences of possible alternative constructions. *Lobato v. Indus. Claim Appeals Office, supra,* 105 P.3d at 223–24.

Here, we conclude that the plain and unambiguous language of § 10–4–517 provides absolute immunity to CIGA from liability of any kind for any action taken by CIGA in the performance of its powers and duties, including the handling of claims. This mandatory directive is broad and without limitation or restriction and includes, in our view, immunity from liability for penalties under § 8–43–304(1). *See Sargent Sch. Dist. No. RE–33J v. W. Servs., Inc.,* 751 P.2d 56 (Colo. 1988)(where the word "shall" is used in a statute, it is presumed to be mandatory); *In re L.F.,* 56 P.3d 1249, 1250 (Colo.App.2002) (" '[a]ny' is a term of expansion without restriction or limitation").

We thus do not perceive any conflict between § 8–43–304(1) and § 10–4–517. Rather, CIGA's broad immunity under § 10–4–517 from all liabilities, including penalties, merely acts as an exception to § 8–43–304(1). To the extent there is any conflict between the two statutory provisions, § 10–4–517, as the more specific and later-enacted statute, controls. *See* § 2–4–205, C.R.S.2004 (a special or specific statutory provision prevails over a general provision); *Freemyer v. Indus. Claim Appeals Office,* 32 P.3d 564 (Colo.App.2000); *see also* § 2–4–206, C.R.S. 2004 (where two statutes conflict, statute enacted later controls); *Ortega v. Indus. Comm'n,* 682 P.2d 511 (Colo.App.1984).

Thus, under the plain and unambiguous language of § 10–4–517, CIGA is statutorily immune from liability for penalties for its own alleged misconduct after Great States' insolvency.

### III.

Claimant also contends that § 10–4–517 must be narrowly construed because that statutory provision contains no express immunity from penalties imposed under § 8–43–304(1). We disagree.

Section 10–4–502, C.R.S.2004, sets forth the purpose of the statute creating CIGA and provides:

> The purposes of this part 5 are to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

Moreover, § 10–4–505, C.R.S.2004, explicitly provides that the CIGA Act "shall be liberally construed to effect the purposes enumerated in Section 10–4–502, which section shall constitute an aid and guide to interpretation." *See Breaux v. Klein,* 572 So.2d 656 (La.Ct.App.1990)(construing identical provisions of Louisiana statute and concluding that penalties and attorney fees fall outside the "covered claims" contemplated by the statute and that a contrary determination would defeat the underlying purpose of the insurance guaranty fund statute).

Courts from other states have almost uniformly concluded that the language and purpose of their states' immunity provisions, which are identical to Colorado's, demonstrate the legislatures' intent to preclude liability for, and claims based on, an insurance guaranty fund's own actions. *See, e.g., Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 984 P.2d 574 (Ct.App.1999)(immunity provision identical to § 10–4–517 precludes tort claim against fund for bad faith failure to settle and covered claim does not include tort damages); *Isaacson v. Cal. Ins. Guar. Ass'n,* 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297 (1988)(guaranty association

immune from liability for tort claims, including refusal to attempt to settle in good faith, both under definition of covered claim and separate provision explicitly limiting association's liability); *Fernandez v. Fla. Ins. Guar. Ass'n*, 383 So.2d 974 (Fla.Dist.Ct.App. 1980)(bad faith action could not be maintained against association under statutes identical to §§ 10–4–503(4) and 10–4–517); *Caulfield v. Leonard*, 676 So.2d 1117 (La.Ct.App.1996)(guaranty fund immune from penalties); *Williams v. Champion Ins. Co.*, 590 So.2d 736 (La.Ct.App.1991)(specifically holding that Louisiana insurance guaranty fund is immune from penalties even for its own arbitrary and capricious actions in not paying claims timely after a demand is made on fund); *Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302 (Mo.1998)(immunity statute identical to § 10–4–517 precluded claim based on association's vexatious refusal to pay claim); *Howell v. State*, 263 Mont. 275, 868 P.2d 568 (1994)(attorney fees incurred when guaranty association withdrew its defense did not constitute covered claim under provisions identical to §§ 10–4–502, 10–4–503(2), and 10–4–517); *Hudson Envtl. Servs., Inc. v. N.J. Prop.-Liab. Ins. Guar. Ass'n*, 372 N.J.Super. 284, 858 A.2d 39 (Ct. Law Div.2004) (immunity of guaranty fund from all claims is consistent with purposes of guaranty fund statute); *Schreffler v. Pa. Ins. Guar. Ass'n*, 402 Pa.Super. 309, 586 A.2d 983 (1991)(plain language of statute identical to § 10–4–517 precluded cause of action for bad faith failure to settle).

The sole case on which claimant relies, *Callaghan v. Rhode Island Information Coordinating Committee*, 704 A.2d 740 (R.I. 1997), is not persuasive because it represents the solitary minority view and is contrary to the purposes of the CIGA Act.

Accordingly, we agree with the majority view and conclude that § 10–4–517 precludes the assessment of penalties against CIGA, notwithstanding the language in § 8–43–304(1). This interpretation of the statute furthers, rather than hampers, the legislative purpose of § 10–4–502, which is to avoid "excessive delay in payment and financial loss to claimants or policyholders because of the insolvency of an insurer." Indeed, the consequences of adopting claimant's statutory construction would be directly contrary to the purposes of the CIGA Act because requiring CIGA to pay penalties for postinsolvency acts would result in increased premiums for individual policyholders and depletion of CIGA funds to pay for covered claims of all claimants whose insurers had become insolvent. *Lobato v. Indus. Claim Appeals Office, supra; see Breaux v. Klein, supra*, 572 So.2d at 659.

We also reject claimant's argument that our interpretation constitutes an impermissible repeal by implication of the general penalty statute. *See Freemyer v. Indus. Claim Appeals Office, supra* (court summarily rejected such argument after comparing unequivocal language of specific workers' compensation statute to that of general statute providing lien for attorney fees).

Further, because we conclude that CIGA's immunity from penalties is mandated by the "no liability" language in § 10–4–517, we need not address claimant's alternative argument that the phrase "cause of action" in § 10–4–517 is a technical one that grants immunity to CIGA only in civil actions and not in special statutory proceedings, such as workers' compensation cases.

Finally, any inequity that may occur because of this statutory interpretation is one that should be addressed to, and resolved by, the General Assembly. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480 (Colo.1985); *Humane Soc'y v. Indus. Claim Appeals Office*, 26 P.3d 546 (Colo.App.2001); *see also Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund, supra*, 984 P.2d at 583 (stating that claimant's policy arguments against immunity for Arizona's insurance guaranty fund are better addressed to the legislature or the state department of insurance).

The order is affirmed.

Judge MARQUEZ and Judge CARPARELLI concur.